OPINION *Page 2 
{¶ 1} Defendant-appellant Timothy J. Moore appeals the judgment of the Allen County Court of Common Pleas finding him guilty of murder in violation of R.C. 2903.02(A). For the reasons that follow, we affirm.
 {¶ 2} In February 2006, Moore lived in a house in Allen County, Ohio with his wife, the victim in this case. The victim's two young daughters also lived in the house. Moore and the victim had marital difficulties, and the victim shared a bedroom with her 12-year-old daughter. Apparently, the victim planned to leave Moore when her daughters finished the school year.
 {¶ 3} On the evening of February 27, 2006, the victim and her daughters visited David and Janice Pohlman on the Pohlman's farm, where the victim boarded horses. The victim exercised her horses for several hours, and she and her daughters left the farm and arrived home between 9:00 p.m. and 10:00 p.m. Within an hour, the victim's daughters laid down in their respective bedrooms.
 {¶ 4} Thereafter, Moore and the victim engaged in an argument that escalated into a physical altercation. During the fight, the victim was stabbed in her heart with a knife with an eight-inch blade. When the victim's 12-year-old *Page 3 
daughter heard the victim scream, she left her bedroom and found the victim lying on the living room floor covered in blood. Moore called 911. According to Moore, the victim attacked him with the knife, he defended himself, he struggled with the victim, and the victim accidentally fell on the knife.
 {¶ 5} Marion Township Police Chief Doug Vermillion and four paramedics arrived at the house minutes after Moore called 911. Moore met everyone outside in front of the garage. The paramedics entered the house to tend to the victim, and Chief Vermillion spoke with Moore in the driveway and garage area. Two additional officers arrived later, and one of the officers arrested Moore. Unfortunately, the victim died at the scene.
 {¶ 6} On March 16, 2006, the Allen County Grand Jury indicted Moore for one count of murder in violation of R.C. 2903.02(A), a first-degree felony. Moore pled not guilty to the charge.
 {¶ 7} Prior to trial, Moore moved to suppress the statements he made to Chief Vermillion in the driveway and open-garage area. Moore argued Chief Vermillion did not administer Miranda warnings to him and, thus, Chief Vermillion obtained the statements in violation of theFifth Amendment to the United States Constitution and Article I, Section 10, of the Ohio Constitution. Following a suppression hearing, the trial court denied Moore's request. *Page 4 
 {¶ 8} The matter proceeded to a four-day jury trial. On September 22, 2006, the jury found Moore guilty of murder, and the trial court accepted the jury's verdict. In accordance with R.C. 2929.02(B), the trial court sentenced Moore to a mandatory term of 15 years to life in prison. Moore subsequently moved for a new trial, but the trial court denied his request.
 {¶ 9} Moore now appeals to this court and sets forth ten assignments of error for our review. For purposes of clarity, we combine Moore's fourth and tenth assignments of error. We also consider Moore's ninth assignment of error out of the order that he presented it to us in his brief.
 ASSIGNMENT OF ERROR NO. I The trial court committed an error of law when it overrulled [sic] appellant's motion to suppress.
 {¶ 10} In his first assignment of error, Moore claims the trial court erred when it denied his motion to suppress the statements he made to Chief Vermillion in the driveway and open-garage area. To support his claim, Moore argues Chief Vermillion did not administer Miranda warnings to him and, thus, Chief Vermillion obtained the statements in violation of the Fifth Amendment to the United States Constitution and Article I, Section 10, of the Ohio Constitution.
 {¶ 11} Our review of the trial court's decision to deny Moore's motion to suppress presents mixed questions of law and fact. See State v.Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. We must give deference *Page 5 
to the trial court's factual findings so long as competent, credible evidence exists to support the findings. Id. With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must decide whether the facts satisfy the applicable legal standard. Id., citing State v. McNamara (1997), 124 Ohio App.3d 706,710, 707 N.E.2d 539.
 {¶ 12} At issue is whether the circumstances required Chief Vermillion to administer Miranda warnings to Moore. Only "custodial interrogation" triggers that requirement. State v. Mason (1998), 82 Ohio St.3d 144,153, 694 N.E.2d 932. "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona (1966), 384 U.S. 436, 444,86 S.Ct. 1602, 16 L.Ed.2d 694.
 {¶ 13} During the suppression hearing, Chief Vermillion testified that he responded to the house at approximately 10:30 p.m., that the 911 dispatcher described the incident as an unknown "accident," and that he encountered Moore outside in front of the garage. Moore was shirtless, shoeless, and covered in blood. Chief Vermillion asked Moore what happened, and Moore replied that the victim had been stabbed. To make sure that an assailant did not remain in the house, Chief Vermillion asked Moore who stabbed the victim, and Moore said that he did. *Page 6 
 {¶ 14} The transcript of the suppression hearing reflects: no one other than Chief Vermillion spoke to Moore during the relevant time period; the conversation took place in the driveway and open-garage area; and Chief Vermillion asked Moore six to eight questions. For example, Chief Vermillion asked Moore whether the victim had any medical allergies, whether anyone else resided in the house, and whether any other victims existed. In addition, the transcript reflects: Moore did not attempt to leave; Chief Vermillion did not tell Moore he could not leave; Chief Vermillion kept Moore out of the house and away from the paramedics tending to the victim; Chief Vermillion did not keep Moore in the garage; and Chief Vermillion did not place Moore under formal arrest and/or handcuff him. Chief Vermillion acknowledged on cross-examination, however, that he would have required Moore to stay if Moore expressed a desire to leave.
 {¶ 15} Simply put, nothing in the record establishes that Chief Vermillion actually "interrogated" Moore under the particular and unusual facts of this case. "The concept of `interrogation' reflects some measure of compulsion in questioning or in actions." Rhode Islandv. Innis (1980), 446 U.S. 291, 300-302, 100 S.Ct. 1682, 64 L.Ed.2d 297. Here, however, Chief Vermillion's testimony at the suppression hearing reveals that he sought to elicit basic facts relative to the investigation of an unknown "accident." The few questions that Chief Vermillion did ask were necessary preliminary investigative inquiries to assess the situation *Page 7 
and to tend to the victim, nothing more. Accordingly, we cannot say that Chief Vermillion engaged Moore in "custodial interrogation."
 {¶ 16} Based on the foregoing, we conclude the circumstances did not require Chief Vermillion to administer Miranda warnings to Moore, and the trial court did not err when it denied Moore's motion to suppress. Therefore, we overrule Moore's first assignment of error.
 ASSIGNMENT OF ERROR NO. II The trial court committed an error of law by denying appellant due process of law when he was obstructed from viewing certain witnesses' testimony by the prosecutor's physical barricade.
 {¶ 17} In his second assignment of error, Moore argues the prosecutor positioned himself in the courtroom as a "physical barricade" when the victim's 12-year-old daughter testified at trial. Moore argues the prosecutor thereby prevented him, as well as defense counsel, from seeing and hearing the witness. Moore thus concludes the prosecutor and/or trial court violated the literal meaning of the Confrontation Clause in the Sixth Amendment to the United States Constitution.
 {¶ 18} The Sixth Amendment Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." It applies to state prosecutions by way of the Fourteenth Amendment to the United States Constitution. Pointer v. Texas *Page 8 
(1965), 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d. 923. As such, in this case, the Sixth Amendment guaranteed Moore the right to confront the victim's 12-year-old daughter when she testified at trial. SeeState v. Self (1990), 56 Ohio St.3d 73, 76, 564 N.E.2d 446. Article I, Section 10, of the Ohio Constitution did so as well. Id.
 {¶ 19} For support, Moore cites the United States Supreme Court's plurality opinion in Coy v. Iowa (1988), 487 U.S. 1012, 108 S.Ct. 2798,101 L.Ed.2d 857. It held that placing a large screen between a defendant and two 13-year-old sexual assault victims while the victims testified at trial violated the "irreducible literal meaning" of the Confrontation Clause and, thus, the defendant's right to face-to-face confrontation.Coy, 487 U.S. at 1021 (O'Connor, J., concurring).
 {¶ 20} At trial, the victim's daughter testified against Moore about events related to the fatal altercation. When the prosecutor questioned the victim's daughter on direct examination, defense counsel stated that the prosecutor blocked both his view and Moore's view of the witness. The trial court directed the prosecutor to move, and the prosecutor apparently did so. The record provides, in pertinent part, as follows:
 Mr. Kluge: Judge, excuse me, I can't see around Mr. Waldick, and I know Tim can't either. I wonder if he could stand over there so perhaps — if there's an issue, then she wouldn't have to look at us. *Page 9 
 The Court: Well, I don't want him to block the jury — no, it's — Mr. Waldick, maybe you can scootch [sic] over that way a little bit. All right? Go ahead.
 Mr. Waldick: Thank you.
 {¶ 21} The prosecutor proceeded to ask the victim's daughter over 100 questions. Defense counsel then stated, for a second time, that the prosecutor blocked his view of the witness. Defense counsel also stated the prosecutor prevented him from hearing the witness. Again, the trial court directed the prosecutor to move, and the prosecutor apparently did so. The record provides, in pertinent part, as follows:
 Mr. Kluge: Judge, I am unable to see or hear the witness because the Prosecutor continues to obstruct —
 The Court: All right, all right. Mr. Waldick, Mr. Waldick, get out of the way so Mr. Kluge can see the witness and so he can hear the witness.
Thereafter, the prosecutor finished his direct examination, and defense counsel cross-examined and later re-crossed the witness.
 {¶ 22} In short, the record does not support Moore's argument. And, without more, we cannot say that the foregoing excerpts establish the prosecutor acted as a "physical barricade," that the prosecutor and/or trial court violated Moore's literal right to face-to-face confrontation, or that this case is similar to Coy and its progeny. Accordingly, we find Moore's argument meritless, and we overrule Moore's second assignment of error. *Page 10 
 ASSIGNMENT OF ERROR NO. Ill The trial court committed an error of law by denying appellant access to the Allen County Children Service records.
 {¶ 23} In his third assignment of error, Moore argues the trial court erred when it denied his requests to access all records from the Allen County Children Services Board that related to an unsubstantiated allegation the victim abused and neglected her daughters. Significantly, the trial court reviewed all of the records in camera, and it granted Moore access to some of the records. Nevertheless, Moore believes the unreleased records contain inconsistent statements and other information favorable to him and material to either guilt and/or punishment.
 {¶ 24} A trial court has discretion to decide whether certain information is or is not discoverable. See State v. Orwick,153 Ohio App.3d 65, 2003-Ohio-2682, 790 N.E.2d 1238, at ¶ 13, citingRadovanic v. Cossler (2000), 140 Ohio App.3d 208, 213, 746 N.E.2d 1184. As such, we will not disturb the trial court's decision on that issue absent an abuse of that discretion. Id. An abuse of discretion suggests a trial court's decision is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481,450 N.E.2d 1140.
 {¶ 25} R.C. 2151.421(H)(1) makes the records at issue "confidential" and thereby removes them from Ohio's public records statute, R.C.149.43. In a criminal proceeding, it also makes the records "admissible in evidence in *Page 11 
accordance with the Rules of Evidence" and "subject to discovery in accordance with the Rules of Criminal Procedure." R.C. 2151.421(H)(1);State v. Donnal, 3d Dist. No. 1-06-31, 2007-Ohio-1632, at ¶¶ 4, 8. Crim.R. 16 governs such discovery matters.
 {¶ 26} On appeal, Moore posits the unreleased records contain inconsistent statements and other information favorable to him and material to either guilt and/or punishment. From this premise, Moore argues he needed the statements and information to present his defense and impeach the victim's 12-year-old daughter. In support, Moore cites Crim.R. 16(B)(1)(g), which sets forth the rules for in camera inspections of witness statements. That division provides:
 (g) In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies. If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon. Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal. *Page 12 
 {¶ 27} We have inspected all of the records at issue, and, like the trial court, we find the unreleased records do not contain information that is either material to Moore's defense or otherwise favorable to Moore. This includes inconsistent statements or other information that Moore could have used to impeach the victim's daughter. Therefore, we conclude the trial court did not abuse its discretion when it granted Moore access to some but not all of the records, and we overrule Moore's third assignment of error.[1]
 ASSIGNMENT OF ERROR NO. V The trial court committed an error of law by denying appellant's Criminal Rule 29 motion for aquittal [sic] based upon the state's failure to prove the essential element of purpose.
 {¶ 28} In his fifth assignment of error, Moore argues the trial court committed plain error when it denied his Crim.R. 29(A) motion for a judgment of acquittal. According to Moore, plain error exists because no rational trier of fact could have found the prosecution proved a material element of murder beyond a reasonable doubt. Specifically, that he "purposely" caused the victim's death. R.C. 2903.02(A).
 {¶ 29} Crim.R. 29(A) provides, in pertinent part, as follows:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the *Page 13 indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
Under Crim.R. 29(A), a trial court shall not grant a defendant's motion for a judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether the prosecution proved each material element of the crime at issue beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261, 263, 9 O.O.3d 401,381 N.E.2d 184.
 {¶ 30} The foregoing standard must be viewed in light of the sufficiency-of-the-evidence test. State v. Carter (1995),72 Ohio St.3d 545, 553-54, 651 N.E.2d 965. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1981),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded on other grounds in State v. Smith (1997), 80 Ohio St.3d 89,103, 684 N.E.2d 668. When reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 31} If a defendant moves for a judgment of acquittal at the close of the prosecution's case-in-chief, and the trial court denies the motion, the defendant *Page 14 
waives any error if the defendant presents evidence in his defense.State v. Brown (1993), 90 Ohio App.3d 674, 685, 630 N.E.2d 397. To preserve a sufficiency-of-the-evidence challenge, the defendant must renew his motion for a judgment of acquittal at the close of all of the evidence. Id., citing Helmick v. Republic-Franklin Ins. Co. (1988),39 Ohio St.3d 71, 529 N.E.2d 464, paragraph one of the syllabus; see, also,Dayton v. Rogers (1979), 60 Ohio St.2d 162, 163, 14 O.O.3d 403,398 N.E.2d 781, overruled on other grounds in State v. Lazzaro (1996),76 Ohio St.3d 261, 266, 667 N.E.2d 384.
 {¶ 32} In this case, Moore moved for a judgment of acquittal at the close of the prosecution's case-in-chief. The trial court denied his request, and Moore presented evidence in his defense. Moore did not renew his motion at the close of all of the evidence. Because he did not do so, Moore waived all but plain error.
 {¶ 33} For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right.State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. We recognize plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. *Page 15 
 {¶ 34} The section of the murder statute that applies here, R.C.2903.02(A), provides in pertinent part as follows: "No person shall purposely cause the death of another * * *." Under that section,
 [a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
R.C. 2901.22(A).
 {¶ 35} Upon review, we conclude a rational trier of fact could have found the prosecution proved beyond a reasonable doubt that Moore "purposely" caused the victim's death under R.C. 2903.02(A) and2901.22(A). Ample evidence exists in the record to support our conclusion. For example, the victim's 12-year-old daughter testified that she heard the victim scream, that she exited her bedroom, and that she found the victim lying on the living room floor covered in blood. More importantly, the victim's daughter testified that when she asked Moore what happened, Moore said he stabbed the victim "because he couldn't take her anymore."
 {¶ 36} Additionally, the forensic pathologist who performed the autopsy on the victim, Dr. Diane Scala Barnett, appeared as a witness for the prosecution. She testified that the wound tract was approximately six to seven inches deep, and that the eight-inch knife blade pierced the victim's clothing, breast tissue, ribs, and *Page 16 
major organs. She also opined that the depth and severity of the wound caused the victim's death, and that "a great deal of force" was needed to inflict the wound.
 {¶ 37} Given the foregoing, we fail to see how the trial court committed error, plain or otherwise, when it denied Moore's Crim.R. 29(A) motion for a judgment of acquittal. As we concluded above, a rational trier of fact could have found the prosecution proved beyond a reasonable doubt that Moore "purposely" caused the victim's death. Accordingly, we overrule Moore's fifth assignment of error.
 {¶ 38} Moore's fifth assignment of error relates in part to his ninth assignment of error. As such, we consider Moore's ninth assignment of error out of the order that he presented it to us in his brief.
 ASSIGNMENT OF ERROR NO. IX The jury verdict is not supported by sufficient evidence and is against the manifest weight of the evidence.
 {¶ 39} In his ninth assignment of error, Moore claims his conviction is not supported by sufficient evidence. Moore also claims his conviction is against the manifest weight of the evidence. To support each claim, Moore argues, again, that the prosecution did not prove Moore "purposely" caused the victim's death. R.C. 2903.02(A).
 {¶ 40} Our analysis and disposition of Moore's fifth assignment of error determines Moore's first claim that his conviction is not supported by sufficient *Page 17 
evidence. As we concluded above, a rational trier of fact could have found the prosecution proved beyond a reasonable doubt that Moore "purposely" caused the victim's death. Thus, Moore's first claim lacks merit.
 {¶ 41} Moore's second claim, that his conviction is against the manifest weight of the evidence, implicates a different standard. In determining whether a conviction is against the manifest weight of the evidence, we must examine the entire record, " `[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215,485 N.E.2d 717. Because the trier of fact is in a better position to observe the demeanor of the witnesses and weigh their credibility, such matters are for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,231, 39 O.O. 2d 366, 227 N.E.2d 212.
 {¶ 42} The prosecution presented extensive testimony and evidence during its case-in-chief. Again, the victim's 12-year-old daughter testified that she heard the victim scream, that she exited her bedroom, and that she found the victim lying on the living room floor covered in blood. More importantly, she testified that *Page 18 
when she asked Moore what happened, Moore said he stabbed the victim "because he couldn't take her anymore."
 {¶ 43} Additionally, the prosecution presented evidence that the victim had been stabbed in her heart with an eight-inch knife blade. Dr. Barnett testified that the wound tract was approximately six to seven inches deep, and that the knife pierced the victim's clothing, breast tissue, ribs, and major organs. In her opinion, the depth and severity of the wound caused the victim's death, and "a great deal of force" was needed to inflict the wound.
 {¶ 44} Moore presented extensive testimony and evidence in his defense. For example, he testified at trial that he and the victim had marital difficulties, that the victim wanted more children but he did not, and that the victim acted in a violent manner. In regard to the victim's death, he testified the victim attacked him with the knife, he defended himself, he struggled with the victim, and the victim accidentally fell on the knife. Furthermore, he testified: he did not tell the victim's daughter that he stabbed the victim "because he couldn't take her anymore"; he called 911 and David and Janice Pohlman for help; and he and the victim's daughter held the victim and tried to stop her bleeding before he met Chief Vermillion and the paramedics.
 {¶ 45} Moore also presented his own expert witness, Dr. Werner Spitz, a forensic pathologist. Dr. Spitz did not perform an autopsy on the victim. Nor did *Page 19 
he personally examine the victim's body or consult with Dr. Barnett. Instead, he reviewed autopsy pictures of the victim's body, Dr. Barnett's autopsy report, and a police report.
 {¶ 46} Like Dr. Barnett, Dr. Spitz discussed the degree of force needed to inflict the victim's wound. According to Dr. Spitz, ribs are comprised of hard bone and soft "gristle," in this case the knife went through three of the victim's ribs at a downward angle, and the knife cut through "gristle" not bone. He further testified: the depth of a wound tract is "meaningless" because the skin is the primary resistance; it takes less than two pounds of force to penetrate skin on the chest and/or abdomen with a knife; the same force is required to inflict a deep wound that is required to inflict a shallow wound; and once the skin is penetrated, the knife "flows almost without push." Additionally, Dr. Spitz looked at pictures and identified multiple defensive wounds on Moore's body. He did not identify any defensive wounds on the victim's body.
 {¶ 47} In sum, we reviewed the record in this case, and we cannot say the jury clearly lost its way and created such a manifest miscarriage of justice that Moore's conviction must be reversed and a new trial ordered. The parties presented ample testimony and evidence at trial, and the jury could have drawn inferences based on its perceived lack of witness credibility. The jury could have also reasonably determined from the testimony and evidence that Moore *Page 20 
"purposely" caused the victim's death. Accordingly, we conclude Moore's second claim also lacks merit.
 {¶ 48} For the foregoing reasons, we overrule Moore's ninth assignment of error.
 ASSIGNMENT OF ERROR NO. VI The trial court committed an error of law when it failed to allow defense counsel the opportunity to put on demonstrative evidence regarding force.
 {¶ 49} In his sixth assignment of error, Moore argues the trial court erred when it denied his request to conduct an in-court demonstration to bolster Dr. Spitz's testimony. Moore sought to introduce skin-less, butchered pig ribs and have Dr. Spitz cut the ribs in front of the jury to show how easily the eight-inch knife blade would cut "gristle."
 {¶ 50} A trial court may admit demonstrative evidence if the evidence is relevant; the evidence is "substantially similar" to the object or occurrence that it is intended to represent; and the evidence does not consume undue time, confuse the issues, or mislead the jury. State v.Jackson (1993), 86 Ohio App.3d 568, 570-71, 621 N.E.2d 710. A trial court maintains discretion to admit or exclude experimental or demonstrative evidence. State v. Herring (2002), 94 Ohio St.3d 246, 255,762 N.E.2d 940. As such, we will not overturn the trial court's decision on that issue absent an abuse of that discretion. Id. *Page 21 
 {¶ 51} Defense counsel, the prosecution, and the trial court all questioned Dr. Spitz about the proposed demonstration outside of the presence of the jury. In response, Dr. Spitz stated no significant differences existed between pig ribs and human ribs, or between the circumstances of the demonstration and the circumstances under which the victim was stabbed. He voluntarily acknowledged, however, that he did not need to conduct the demonstration if the jury believed his testimony.
 {¶ 52} The trial court labeled the proposed demonstration "expert demonstrative evidence." To determine admissibility, the trial court focused its analysis on whether the demonstration would help or mislead the jury. The trial court noted the demonstration did not account for certain circumstantial factors, which included, among other things, "clothing, skin, blood pressure, organs, space between organs, space inside the cavity, elasticity of organs, [and] elasticity of skin." The trial court concluded these dissimilarities rendered the demonstration unreliable and created a real potential to mislead the jury. The trial court therefore denied Moore's request to conduct the demonstration.
 {¶ 53} After reviewing the record, we find, as did the trial court, that the dissimilarities created a real potential for the proposed demonstration to mislead the jury. Plus, the trial court permitted Dr. Spitz to testify at length on the issue of force and how easily the eight-inch knife blade could cut "gristle," and Dr. Spitz *Page 22 
voluntarily acknowledged that he did not need the demonstration if the jury believed his testimony. Under such circumstances, we cannot say the trial court abused its discretion, and we overrule Moore's sixth assignment of error.
 ASSIGNMENT OF ERROR NO. VII The trial court committed an error of law by not allowing appellant the right to adduce specific acts evidence under Ohio Rule [sic] of Evidence 404 and 405.
 {¶ 54} In his seventh assignment of error, Moore argues the trial court erred when it refused to permit him to elicit testimony from other witnesses regarding their knowledge of specific instances in which the victim exhibited violent behavior. According to Moore, the trial court's decision hindered his ability to establish an element of the affirmative defense of self-defense, that he maintained a bona fide belief of imminent danger or death or great bodily harm.
 {¶ 55} A trial court has broad discretion to admit or exclude evidence. State v. Issa (2001), 93 Ohio St.3d 49, 64, 752 N.E.2d 904. As such, we will not overturn the trial court's decision on that issue absent an abuse of that discretion. Id.
 {¶ 56} Evid.R. 404 and 405 set forth the applicable rules regarding the introduction of character evidence. In particular, Evid.R. 404(A)(2), which applies here, provides in pertinent part as follows:
 (A) Character evidence generally. Evidence of a person's character or trait of his character is not admissible for the *Page 23 purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 (2) Character of the victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible * * *.
 {¶ 57} Evid.R. 405 relates to Evid.R. 404. Sections (A) and (B) of Evid.R. 405 set forth the proper methods for a proponent to introduce character evidence if that evidence is admissible under Evid.R. 404. Those sections provide as follows:
 Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 Specific instances of conduct. In cases in which character or trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.
 {¶ 58} To establish self-defense, a defendant must prove, among other things, that he had a bona fide belief he was in imminent danger of death or great bodily harm and his only means of escape from that danger was in the use of force. State v. Robbins (1979), 58 Ohio St.2d 74,12 O.O.3d 84, 388 N.E.2d 755, paragraph two of the syllabus.
 {¶ 59} When arguing self-defense, a defendant may testify about specific instances of the victim's prior conduct known to the defendant in order to establish *Page 24 
the defendant's state of mind. State v. Spinks (1992),79 Ohio App.3d 720, 730, 607 N.E.2d 1130, citing State v. Carlson (1986),31 Ohio App.3d 72, 31 OBR 112, 508 N.E.2d 999, paragraph one of the syllabus;State v. Brown (May 7, 1987), 8th Dist. No. 52098, at *3-4; see, also,State v. Davis, 5th Dist. No. 2003 CA 429, 2004-Ohio-7056, at ¶¶ 19, 25, citing State v. Baker (1993), 88 Ohio App.3d 204, 208, 623 N.E.2d 672;State v. Mason, 6th Dist. Nos. L-02-1211, L-02-1189, 2003-Ohio-5974, at ¶ 39. The crucial element of a self-defense claim is the defendant's state of mind, not the character of the victim. State v. Koss (1990),49 Ohio St.3d 213, 215, 551 N.E.2d 970.
 {¶ 60} At trial, Moore attempted to elicit testimony from other witnesses on direct examination regarding their knowledge of specific instances in which the victim exhibited violent behavior. The prosecution objected, and the trial court refused to permit Moore to elicit that testimony. The trial court did, however, permit Moore to elicit reputation and opinion testimony from the witnesses regarding the victim's character. Thereafter, Moore testified regarding three specific instances in which the victim exhibited violent behavior toward him.
 {¶ 61} Evid.R. 405 and the foregoing case law prohibited Moore from eliciting testimony from the other witnesses on direct examination regarding their knowledge of specific instances in which the victim exhibited violent behavior towards persons other than Moore. Furthermore, nothing in the record indicates *Page 25 
Moore knew about the specific instances he sought to elicit, and Moore did not proffer any testimony in this regard. Thus, we cannot say Moore sought to corroborate his state-of-mind testimony. See Baker,88 Ohio App.3d at 208, 623 N.E.2d 672, citing McGaw v. State (1931),123 Ohio St. 196, 200, 174 N.E. 741; but, see, State v. Banks (June 15, 2000), 8th Dist. No. 76271, at *4 ("Corroborating evidence concerning specific instances of the victim's violent character should be excluded by the trial court.") Therefore, we conclude the trial court did not abuse its discretion, and we overrule Moore's seventh assignment of error.
 ASSIGNMENT OF ERROR NO. VIII The trial court committed an error of law when it permitted the state to elicit prior consistent statements on rebuttal.
 {¶ 62} In his eighth assignment of error, Moore claims the trial court erred when it permitted Investigator Mark Murphy to testify during the prosecution's rebuttal. Particularly, Investigator Murphy testified that the victim's 12-year-old daughter made an out-of-court statement to him consistent with her testimony during the prosecution's case-in-chief. To support his claim, Moore argues the statement constituted inadmissible hearsay because the prosecution did not introduce the statement to rebut an express or implied charge of fabrication, improper influence, or motive. *Page 26 
 {¶ 63} A trial court has broad discretion to admit or exclude evidence. Issa, 93 Ohio St.3d at 64, 752 N.E.2d 904. As such, we will not overturn the trial court's decision on that issue absent an abuse of that discretion. Id.
 {¶ 64} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." But Evid.R. 801(D) provides, in pertinent part, as follows:
 Prior statement by a witness. A statement is not hearsay if: * * *[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *.
 {¶ 65} After reviewing the record, we cannot say the trial court abused its discretion when it permitted Investigator Murphy to testify on rebuttal that the victim's 12-year-old daughter made an out-of-court statement to him consistent with her testimony. The record reflects the victim's daughter made the statement to Investigator Murphy the day after the fatal altercation. And, among other things, defense counsel suggested on cross-examination that the victim's family prompted her to alter her account of the fatal altercation after she made the statement. Thus, the prosecution introduced the statement during its rebuttal to negate that inference. We conclude, therefore, that the statement did not constitute hearsay, and we overrule Moore's eighth assignment of error. *Page 27 
 ASSIGNMENT OF ERROR NO. IV The trial court committed an error of law by failing to find that a mistrial had occurred after the jury pool was exposed to the aftermath of a bomb threat.
 ASSIGNMENT OF ERROR NO. X The trial court made an error of law in denying the Criminal Rule 33, motion for [sic] new trial.
 {¶ 66} In his fourth assignment of error, Moore claims the trial court erred when it denied his requests for a mistrial. A mistrial was warranted, Moore argues, because a bomb threat created an irregularity in the proceeding that prevented him from receiving a fair trial. Moore also claims, in his tenth assignment of error, that the trial court erred when it denied his motion for a new trial under Crim.R. 33(A)(1) because the trial court abused its discretion when it denied his requests for a mistrial.[2] We address each claim in turn.
 {¶ 67} A trial court has discretion to grant or deny a defendant's motion for a mistrial. State v. Iacona, 93 Ohio St.3d 83, 100,752 N.E.2d 937, citing State v. Sage (1987), 31 Ohio St.3d 173, 182,31 OBR 375, 510 N.E.2d 343. As such, we will not disturb the trial court's decision on that issue absent an abuse of that discretion. Id. *Page 28 
 {¶ 68} A trial court should not declare a mistrial because of an irregularity, unless the irregularity harmed a defendant's substantial rights. State v. Reynolds (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490. A mistrial is necessary "only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991),62 Ohio St.3d 118, 127, 580 N.E.2d 1, citing Illinois v. Somerville (1973),410 U.S. 458, 462-63, 93 S.Ct. 1066, 35 L.Ed.2d 425.
 {¶ 69} On the second day of trial, Moore's daughter found a pipe bomb in her driveway under her vehicle. Consequently, the trial court asked the county sheriffs office to check the juror's cars, which the jurors parked near the courthouse. The trial court told the jurors an investigation could delay everyone in the courthouse from leaving, and it did not know whether the investigation related to the trial. Before the trial court discharged the jurors, it admonished them to avoid all news reports. Moore moved for a mistrial, and the trial court denied his request.
 {¶ 70} The next morning the trial court voir dired all twelve jurors, as well as the two alternate jurors, individually. Everyone stated that they followed the trial court's admonition to avoid all news reports, that the events outside the courtroom did not impact their ability or willingness to serve on the jury, and that they could serve fairly and impartially. One juror did, however, express concern about serving on the jury because she realized she lived near Moore and his *Page 29 
family. The trial court immediately excused the juror and replaced her with an alternate juror. Following the voire dire, Moore renewed his motion for a mistrial, and the trial court denied his request.
 {¶ 71} Simply put, the record does not support Moore's argument that a mistrial was warranted. Nothing in the record indicates the jurors learned about the bomb threat or the substance of the investigation. Nor does anything exist in the record that establishes the bomb threat prejudiced Moore in any way. Instead, Moore simply speculates that it did.
 {¶ 72} We conclude the bomb threat did not create an irregularity in the proceeding that prevented Moore from receiving a fair trial. We further conclude the trial court acted properly under the particular facts of this case. Accordingly, we are unable to say the trial court abused its discretion when it denied Moore's request for a mistrial, and we find Moore's first claim lacks merit.
 {¶ 73} Our analysis of Moore's first claim is determinative of Moore's second claim, that the trial court erred when it denied his motion for a new trial. This is because Moore's second claim presupposes the trial court abused its discretion when it denied his requests for a mistrial. Since the trial court did not abuse its discretion in this regard, the trial court did not abuse its discretion when it denied Moore's motion for a new trial under Crim.R. 33(A)(1). Accordingly, we find Moore's second claim also lacks merit. *Page 30 
 {¶ 74} For the foregoing reasons, we overrule Moore's fourth and tenth assignments of error.
 {¶ 75} Having found no error prejudicial to Moore in the particulars assigned and argued, we affirm the trial court's judgments in all respects.
Judgments Affirmed.
 ROGERS, P.J. and WILLAMOWSKI, J., concur.
[1] As we noted above, we combined Moore's fourth and tenth assignments of error. We consider those assignments of error infra.
[2] Crim.R. 33(A)(1) provides: "A new trial may be granted on motion of the defendant for any of the follow causes affecting materially his substantial rights: * * * Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial * * *." *Page 1