[Cite as *State v. Kramer*, 2009-Ohio-5769.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
DEFIANCE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASENO. 4-09-12

    v.

ROBERT R. KRAMER, JR.,           O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Defiance County Common Pleas Court
Trial Court No. 08-CR-10266

Judgment Affirmed

Date of Decision:   November 2, 2009

APPEARANCES:

    *Clayton J. Crates*  for Appellant

    *Russell R. Herman*  for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Robert Ray Kramer, Jr., appeals the judgment of the Court of Common Pleas of Defiance County finding him guilty of aggravated assault and sentencing him to a seventeen-month prison term. On appeal, Kramer argues that the trial court committed plain error by not instructing the jury on the defense of others; that he was rendered ineffective assistance of counsel due to trial counsel's failure to request a jury instruction on the defense of others; and, that the jury verdict was against the manifest weight of the evidence. Based on the following, we affirm the judgment of the trial court.

{¶2} In July 2008, the Defiance County Grand Jury indicted Kramer on one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, and one count of aggravated assault in violation of R.C. 2903.12(A)(2), a felony of the fourth degree. The indictment arose from an incident during which Kramer struck Miguel Hernandez with a broken beer bottle during an altercation outside of a bar, severing his jugular vein and causing him to sustain serious injuries. Subsequently, Kramer entered a not guilty plea to both counts in the indictment.

{¶3} In February 2009, the case proceeded to a jury trial, at which the following testimony was heard. Patrolman Drew Waltmire of the Defiance Police Department testified that he responded to a residence on February 24, 2008, in

response to a call that a man was bleeding profusely from his neck; that Patrolman Hendon and Lieutenant Martinez also responded to the residence; that, upon his arrival, he observed Miguel Hernandez holding a blood-soaked towel on his neck, with his shirt covered in blood; that Miguel stated he had been stabbed by a man named Bobby during a fight at Sinner's Bar; that, after Miguel was transported to the hospital, he spoke with him again regarding the incident, and Miguel told him that he was at Sinner's Bar and saw his ex-girlfriend, April Crawford, with Bobby; that Miguel continued that he and Bobby got into an altercation in the bar and he left, that Bobby and two other men followed him out of the bar, that he felt threatened so he put his keys in between his fingers for protection, and that he was hit in the head; that Miguel was then "life-flighted" to another hospital (trial tr., vol. 1, p. 172); and, that he searched Miguel's clothes after he changed at the hospital and found keys, but not a knife.

{¶4} Officer Rueben Hendon of the Gahanna Police Department testified that he was employed by the Defiance Police Department on February 24, 2008; that, on that evening, he responded to an emergency call at a residence with Patrolman Waltmire and Lieutenant Martinez; that, when he arrived at the residence, he observed Miguel on the porch bleeding profusely, with a towel pressed to his neck; that, after gathering information about the incident, he went to the area around Sinner's Bar; that, upon his arrival, he found a broken beer bottle

and blood on the ground; that, after collecting the evidence and taking it back to the station, he went to Kramer's residence; that, when he arrived at the residence, Kramer came to the door and stated that he knew they were going to come and speak with him; that he also stated that Miguel lunged at him with a knife, so he swung a beer bottle and hit Miguel to protect himself; and, that Kramer admitted he had been drinking, but was cooperative with him in going to the police station.

{¶5} Sergeant Steve Waldron of the Defiance Police Department testified that, while working on February 24, 2008, Lieutenant Martinez instructed him to go to Sinner's Bar in regards to a stabbing that had occurred there; that, upon responding to Sinner's, he spoke to Bill Reeves, an employee of the bar, who stated that there had been a fight outside the bar that evening; that Lieutenant Martinez then arrived, and they both viewed the video tape recording from the bar's security camera; that Lieutenant Martinez recognized Kramer on the video tape due to an earlier incident that evening at Spanky's Bar; that, later that evening, Lieutenant Martinez told him to go pick up Kramer; that, upon arriving at the residence, Kramer answered the door and stated that he knew the police were coming; that Kramer agreed to go with him to the police station; and, that, as he was escorting Kramer to the car, Kramer said, "he was coming at me with a knife, I was just protecting myself, you know, what did you expect me to do[.]" (Id. at 219).

{¶6} Patrolman Steven Delaney of the Defiance Police Department testified that he, Sergeant Waldron, and Patrolman Hendon collected evidence in the vicinity of Sinner's Bar; that he followed a blood trail from the residence at which Miguel was discovered down to other streets; that he also went to the vicinity of Sinner's Bar the following morning to look for a knife; that, on the evening of the stabbing and the following morning, he did not find a knife; and, that he did not look for a knife on the rooftops of several buildings in the area, in the residence where Miguel was located, or in several storm drains along the path that Miguel walked from the scene of the stabbing to the residence.

{¶7} Lieutenant Lee Martinez of the Defiance Police Department testified on direct examination that, on the evening of February 24, 2008, he was dispatched to a residence in regards to a man bleeding from his neck; that, when he arrived at the residence, he observed Juan Urbina and Miguel, who was bleeding profusely from his neck; that, after Miguel was taken to the hospital, he went to Sinner's Bar, as that is where Miguel indicated he was involved in the altercation; that, while at Sinner's, he viewed video from the bar's security cameras; that he recognized Kramer on the video as the man he encountered earlier that evening at Spanky's Bar, where it was alleged that Kramer spit beer on his ex-girlfriend; that, on the video, it showed a verbal altercation between Miguel and Kramer, with Miguel being escorted out the door and Kramer and several

other individuals leaving shortly thereafter; that he then went to Kramer's aunt and uncle's residence to speak with potential witnesses; that, at the residence, he located Patricia and David Bernard, Kramer's aunt and uncle, and Tracey McCowan, Kramer's sister; that these three individuals came to the police station for further questioning regarding the incident; that during the interviews, these individuals indicated that there were others involved with Kramer in his altercation with Miguel, but they did not know their names; and, that based upon these interviews, they learned of Kramer's location.

{¶8}  On cross-examination, Lieutenant Martinez testified that, according to the time on the video, Miguel walked into Sinner's Bar at 2:09 a.m.; that Miguel came into the bar and immediately sat next to his ex-girlfriend, April Crawford; and, that Miguel did not order a drink when he first walked in.

{¶9}  Detective John Williamson of the Defiance Police Department testified that he was called to investigate a stabbing incident in the early morning hours of February 24, 2008; that, as part of his investigation, he interviewed Kramer; that Kramer admitted being in an altercation with Miguel outside of Sinner's Bar; that Kramer also told him that he approached Miguel outside due to an altercation they had inside the bar, exchanged words with him, broke a bottle on Miguel's neck, and immediately left when Miguel started bleeding; that he initially told him only he and Crawford were present during the altercation; that

Kramer stated he first had an exchange with Miguel at a UAW hall that night, where he and Crawford went to watch a boxing match; that he continued that he and Crawford left out of a back door of the building after a verbal altercation with Miguel at the event, Miguel went out a different door, there was a confrontation outside, and Miguel threw a bottle at him; that Kramer further stated that he did not encounter Miguel again until he and Crawford were at Sinner's Bar, where Miguel came into the bar and sat next to Crawford, words were exchanged between himself and Miguel, to the effect that she did not want anything to do with him, and employees then escorted Miguel out of the bar; that Kramer then admitted that other individuals were present with him on that evening, but he did not want to give their names "because of potential problems that they could have or would have" (Id. at 288); that he was able to later discover the identities of these individuals through his investigation; that Kramer initially stated that Miguel swung at him with something in his hand during the altercation outside of Sinner's Bar, but that he did not know exactly what it was; that, however, Kramer later stated Miguel had a knife in his hand; and, that Kramer also denied breaking the bottle before striking Miguel with it.

{¶10} Reaud Hernandez, Miguel's brother, testified that he attended a boxing match with Miguel at the UAW Hall; that, while they were at the match, he saw Crawford and Kramer; that Kramer looked at Miguel on more than one

occasion and smiled at him; that Kramer also called out Miguel's name and laughed at him; that Miguel never said anything to Kramer; that he left the boxing match, but Miguel stayed; that, the next time he had contact with Miguel, he was in the hospital; and, that he had previously seen Miguel under the influence of marijuana.

{¶11} Miguel testified on direct examination that Crawford was his ex-girlfriend; that she broke up with him in February 2008 and began dating Kramer; that he attended boxing matches at the UAW hall on February 23, 2008; that, while at the matches, he saw Kramer, who initially approached him and tried to shake his hand; that he did not want to shake Kramer's hand because he was taunting him; that Kramer then walked "by a couple more times smiling * * * and grinning" (trial tr., vol. 2, p. 336); that he then saw Crawford walk in and sit next to Kramer; that, when he left the matches, he did not have an altercation with Kramer or Crawford; that he then went to Papa Primo's Bar, where he became upset about seeing Crawford and Kramer; that he consumed around ten or twelve beers throughout the course of the evening; that, while at Papa Primo's, he sent several text messages to Crawford that were "a lot of BS, * * * it was probably threatening to them * * *, but * * * [he] was just blowing a lot of wind" (Id. at 347); that he subsequently left Papa Primo's to go have another drink at Sinner's Bar; that, when he walked into the bar, Crawford and Kramer were sitting right at

the bar in front of him; that he approached Crawford "to hear some closure * * *, to hear the truth" (Id. at 350); that, when he attempted to talk to Crawford, she ignored him and walked away; that Kramer then approached him and told him to leave Crawford alone, and they subsequently had a heated argument; that the bartender broke up the argument, and he then left; and, that, as he was walking away from the bar, Kramer, a couple of his friends, and Crawford walked out of the back door of the bar and started heckling him, calling him a "sissy", a "fag", and a "spic." (Id. at 355).

{¶12} Miguel continued that he then turned around, exchanged words with Kramer and his two friends, and challenged Kramer to fight him; that Kramer stated he would also have to fight his two friends; that Kramer and the other two men began to encircle him; that he was afraid, so he took his keys out of his pocket and put them between his knuckles in order to defend himself; that he might have swung his fist containing the keys prior to anyone else attempting to strike him, as he was trying to "get them off of [him] [and]was trying to leave" (Id. at 418); that Kramer then grabbed a bottle of beer out of the six-pack that was in his hands, broke it on the ground, and started coming towards him; that he tried to run, but the other two men continued to push him towards Kramer, attempting to punch and kick him; that he began to swing his arms to block the punches and kicks; that he then tried to grab the bottle from Kramer, and Kramer stabbed him

in the neck with it; that Kramer and the two other men then left, and he went to his friend's house to get help; that, while at the hospital, marijuana and cocaine were found in his system; and, that he has two convictions for domestic violence from 1994 and 1996.

{¶13} On cross examination, Miguel testified that some of the text message he sent to Crawford stated, "If fag boy is listening, fuck you. At Primo's waiting for you, fag"; "Fuck you, Bobby. You'll get * * * yours, bitch"; "I really hope you had fun fucking with my head 'cause it's my turn. Tell fag boy I'm waiting"; "Or will I have to look for him? I will * * *"; "* * * I will pay you and fag boy back. I promise you that before I die it will happen"; "A day of reckoning is before you"; "Don't let me catch you and fag boy together. I will fuck your lives up"; "Fuck you boy, I will get you"; and, "Call me or I will go to your house * * *" (Id. at 383-387); that, even though he encountered Kramer at Sinner's Bar, he did not know he was going to be there; that he did not order a drink when he walked into the bar; that, as he was being taunted while walking away from Sinner's Bar, he turned around and headed back towards Kramer and his friends, as he thought there was going to be a fist fight between him and Kramer; that he did not have a knife with him during the altercation, and that he never carries a knife with him; that, when he pulled out his keys and put them between his fingers, he heard people say that he had a knife, to which he responded, "shit,

right" (Id. at 409); that, when he started to throw punches with the keys in his fist, one of the other men had already thrown punches at his head; that he tried to throw a punch at Kramer with the keys in his fist after Kramer broke the beer bottle, but before he stabbed him with it; and, that he lied to the medical personnel at the hospital and told them that he had not ingested any illegal drugs.

{¶14} Jared Sorg testified that he was working as a bartender at Primo's Bar on February 23, 2008; that Miguel came into the bar that evening and was very upset; that Miguel was intoxicated when he entered the bar; that Miguel continued to order drinks and was rude to another bartender; that he was going to stop serving Miguel and ask him to leave, but he left before he had the opportunity; and, that he is Kramer's friend.

{¶15} Crawford testified that she dated Miguel intermittently for two years; that they lived together for about one year; that Miguel previously told her that he was addicted to cocaine; that, one evening after she and Miguel broke up, Kramer contacted her about going to some boxing matches; that she met Kramer at the boxing event, and, while there, she noticed Miguel was also present; that, during the event, she and Kramer went outside to smoke a cigarette; that, while outside, Miguel also came out to smoke; that she and Miguel spoke to each other and were friendly; that, after going back inside and watching the event, she and Kramer proceeded to leave, when Miguel began yelling at them; that Miguel went outside

and called for them to come out; that they decided to go out the back door of the building, through the kitchen; that, as they went out the back door, she heard a loud noise like something hit the dumpster or the top of the car, and Miguel was standing there and began arguing with them; that Miguel was yelling, "how long has this been going on" (Id. at 479); that they then left and went to Spanky's Bar; that, while at Spanky's, something happened but she did not see it because she was in the bathroom; that she and Kramer then went to Sinner's Bar; that, while at Sinner's, she noticed Miguel called her, but she did not notice any text messages; that she did not respond to Miguel's phone calls; that, shortly thereafter, while she was sitting at the bar, she turned around and saw Miguel next to her; that he stated he wanted to speak with her, but she and Kramer asked him to leave, he refused to do so, and an argument ensued; that a bar employee then instructed that they or Miguel leave; that Miguel left out of the front door, she purchased a six pack of beer, and she and Kramer began to exit out of the back door; that, shortly after she walked out the back door, she heard someone say that Miguel was outside, and Kramer told her to go back inside; and, that she went back inside the bar and did not see anything that occurred thereafter.

{¶16} On cross-examination, Crawford testified that she still talks occasionally with Kramer, but they are not dating; that there was an altercation between Kramer and his ex-girlfriend at Spanky's Bar, but she did not see what

happened because she was in the bathroom; that, apparently, Kramer spit on his ex-girlfriend, or she spit on him; that, at some point during the evening, some of Kramer's friends joined her and Kramer, including Craig, Mike, and J.R. Begley; that she could not remember how much Kramer drank that evening; that she was not sure if Craig and Mike also walked out of Sinner's Bar at the same time she and Kramer were leaving; that, after the altercation between Kramer and Miguel, Kramer's aunt, Patricia, came into Sinner's to get her; that Patricia had not been with them that evening; that she then went to Kramer's stepsister's mother's house; that Kramer also arrived at the residence around the same time she did, but he did not ride with her in the car, and she did not know how he got to the residence; that, after the police came to the residence to pick up Kramer, she went to the police station for questioning; that, until she arrived at the police station, she was not aware of the incident between Miguel and Kramer; and, that she did not see any of the text messages that Miguel sent her until several hours after she left Sinner's Bar.

{¶17} Craig Pratt testified on direct examination that he and Kramer are close friends; that he joined Kramer at Spanky's Bar on February 23, 2008; that he did not see Kramer get into an altercation with an ex-girlfriend while at Spanky's; that they then went to Sinner's Bar about an hour and a half later; that another friend, Mike Strong, was also at Sinner's; that, at some point, he and Mike walked

outside, and he saw "[Kramer] in front of [Miguel] and [Miguel] had a knife and was yelling and cussing at [Kramer] and waving the knife at him" (Id. at 507); that Kramer told Miguel to put the knife down and go home; that he and Mike got on each side of Miguel, and Miguel started swinging the knife at them; that he did not want to turn his back to Miguel because he was scared, as Miguel "was acting crazy" (Id. at 516); that, at some point, he heard a bottle break and Miguel started bleeding; that Kramer had a full beer bottle in his hand when they went outside of the bar, and Kramer did not break the bottle while outside; and, that he did not see how the bottle broke, but Kramer stated, as they were leaving, that he hit Miguel with the bottle.

{¶18} On cross-examination, Pratt testified that he has several felony convictions, including a conviction for unlawful sexual conduct with a minor; that he had several drinks that evening even though he was not permitted to consume alcohol as a condition of his parole; and, that he told Detective Williamson that there were certain things he could not remember about the incident because he was drunk.

{¶19} Mike Strong testified on direct examination that he was with Kramer, Crawford, and Kramer's sister at the boxing event; that he did not see any problems during the event; that, as he was leaving, Kramer called him and told him that "there was some guy messing with him, and he threw a beer bottle at him,

and he just wanted me to make sure that I was outside just in case anything went down, so I was there to see it" (Id. at 530); that Kramer never told him "who was messing with him" (Id. at 531); that, when he left the event, he went with Kramer to Spanky's Bar; that he believes one of Kramer's ex-girlfriends arrived at Spanky's, but he did not see her; that they then left Spanky's and went to Sinner's Bar; that he was not permitted to be in a bar at that time as a condition of his probation for negligent vehicular homicide; that, at some point, they left Sinner's; that he does not know exactly why they decided to leave the bar, but it was close to closing time; that he did not see Kramer get into an altercation with Miguel inside of Sinner's; that, as he and Pratt walked outside the bar, he saw Kramer down the street standing face to face with Miguel with his hands up; that, as he walked down the street to make sure Kramer was okay, he saw Miguel holding a knife in his hands; that Kramer told him to watch out because Miguel had a knife, and Miguel swung at Kramer with the knife; that Miguel also swung the knife at him and Pratt; that he could not remember what Miguel said as he was swinging the knife, but Kramer told him to put the knife down and go home; that, at some point, he fell down, and when he stood up, Miguel was holding his neck and saying that he was going home; that he did not see Miguel bleeding or hear glass break; that he did not hear Kramer break a bottle near the entrance of Sinner's Bar;

and, that he was "one hundred percent positive" that Miguel had a knife and not keys. (Id. at 542).

{¶20} On cross-examination, Strong testified that he is friends with Kramer and that he has been dating Kramer's sister for a year and a half; that he did not see anything in Kramer's hands during the altercation with Miguel except a beer bottle; that he, Kramer, and Pratt did not surround Miguel outside of Sinner's Bar, but were standing in front of him; that he did not feel comfortable turning his back on Miguel and walking away because Miguel had a knife; and, that he told Kramer that he had an opportunity to get away from Miguel, and that, as he understood the law, this would not be a case of self-defense.

{¶21} Kramer testified on direct examination that he attended the boxing event in February 2008 with ten or twelve of his family members; that he invited Crawford to attend the event, but they were not dating at the time; that, before Crawford arrived, he saw Miguel and said hello to him, as he knew him from previously working together; that, during the event, he and Crawford went outside to smoke, and Miguel came outside and stared at them; that, during the boxing matches, he had three beers; that, at the end of the event, as he and Crawford were leaving, they walked by Miguel in order to get to the exit, and Crawford stopped and said hello to Miguel's brother, at which time Miguel stated to him, "you're going to fucking get yours," and went to the exit (trial tr., vol. 3, p. 571); that he

then decided to go out the back door of the building to avoid Miguel; that, as he and Crawford walked out of the back door, Miguel came running around the corner and threw something at him, which missed and hit a van behind him; that he told Miguel he needed to go home, and Miguel walked away; that he then proceeded to Spanky's Bar to meet his family and friends; that, while at Spanky's, he drank a beer and also had an altercation with his ex-girlfriend; that she shoved him, he spit beer on her, the police were called, and he was asked to leave; that, he then went to Sinner's Bar with Crawford and his friends and family; and, that, while at Sinner's, he drank more beer and also drank tequila.

{¶22} Kramer continued that, around 2:00 a.m., he saw Miguel come into the bar; that he told Crawford, "[Miguel] just walked in, grab your stuff, lets go" (Id. at 587); that Miguel then started asking Crawford why she was with him, and when she did not reply, Miguel stated, "I'm fucking talking to you" (Id. at 587); that he then told Miguel that she did not want to talk to him and that he needed to calm down; that Miguel then stated, "Fuck you, you ain't got nothing to do with this; * * * shut the fuck up" (Id. at 587-588); that he then told Miguel to "get the fuck away, she's going home with me tonight" (Id. at 588); that Miguel then came towards him; that the bartender then intervened and told both him and Miguel to leave; that Miguel left first out the front door; that he then ordered a six-pack of beer to go and left; that he and Crawford walked out of the bar by themselves, and

he had a beer in his hand; that, as he walked out the door, he heard someone shouting, and he then saw Miguel slightly down the road; that Miguel then began walking towards him, and stated, "I fucking told you your ass was mine * * *, I'm going to fucking kill you," at which time Miguel "started coming at [him] very, very fast" (Id. at 592); that he then told Crawford to go back inside the bar; that he stated to Miguel, "If you want to fight, we can fight. * * * [B]ut I'm telling you I don't want to fight you, go home" (Id. at 594); that, as Miguel advanced closer to him, he could see he had a knife in his hand, and Miguel swung the knife at him; that, at that point, Strong and Pratt came outside, and he told them that Miguel had a knife; that Miguel also swung at them several times with the knife; that he did not see Strong or Pratt hit or kick Miguel; that he did not want to turn his back on Miguel because he thought he might get stabbed; that Miguel again came toward him with the knife, and he then told Miguel that if he cut him with the knife, he was going to hit him with the beer bottle; that Miguel then lunged towards him and swiped at him with the knife, and he hit him with the beer bottle, striking him across the shoulder; that Miguel then stood there for a minute, began to bleed, and stated, "I'm done" (Id at 606); that he did not break the bottle on the ground before he cut Miguel with it, but the bottle broke when he hit Miguel; that he then left, went to his Aunt Patricia's house, and then went to his house with Crawford; that he would have voluntarily gone to the police station if he knew that Miguel was

badly injured; that, shortly after he arrived home, the police came to his house and asked him to come with them; that he told one of the officers that Miguel attacked him with a knife; that, while speaking with Detective Williamson, he stated multiple times that Miguel had a knife; and, that he had a conviction for operating a vehicle while intoxicated, and a juvenile conviction for receiving stolen property.

{¶23} On cross-examination, Kramer testified that he never walked by and smiled at Miguel at the boxing event; that, although Miguel threatened him at the boxing event, he did not contact the police; that he had a confrontation with his cousin's boyfriend while at Sinner's Bar because he told him that he needed to leave; that, when he left Sinner's and Miguel began to yell at him and walk in his direction, he also walked towards Miguel; that he did not try to go back into Sinner's Bar because he had been told to leave, but he did tell Crawford to go back into the bar; that, in his statement to Detective Williamson, he never said that Miguel advanced towards him outside Sinner's Bar; that he also said in his statement that he told Miguel, "[W]e can do this right here" (Id. at 658); that, when Strong and Pratt came outside, Miguel swung at them with the knife, but that each of them would advance on Miguel, which caused the entire altercation to move continually down the street; that he or Crawford never attempted to contact the police; and, that, at his initial interview with police, he did not tell them that

Pratt and Strong were with him that evening because he was asked who went outside Sinner's Bar with him in his confrontation with Miguel, and they did not initially go outside with him, and because they were both on parole and not supposed to be at the bar.

**{¶24}** Subsequently, the jury found Kramer not guilty on the charge of felonious assault and guilty on the charge of aggravated assault.

**{¶25}** In March 2009, the trial court sentenced Kramer to a seventeen-month prison term on the aggravated assault conviction.

**{¶26}** It is from his conviction and sentence that Kramer appeals, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**THE COURT COMMITTED PLAIN ERROR BY NOT INSTRUCTING THE JURY ON DEFENSE OF OTHERS.**

### *Assignment of Error No. II*

**TRIAL COUNSEL PROVED INEFFECTIVE BY NOT REQUESTING A JURY INSTRUCTION ON THE DEFENSE OF OTHERS.**

### *Assignment of Error No. III*

**THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. I*

**{¶27}** In his first assignment of error, Kramer argues that the trial court committed plain error by not giving a defense of others jury instruction. Specifically, Kramer contends that sufficient evidence was presented to establish that he was defending both Pratt and Strong when he struck Miguel, such that an instruction on the defense of others should have been given to the jury. We disagree.

**{¶28}** We initially note that Kramer did not object to the trial court's failure to give an instruction on the defense of others, nor did Kramer request such an instruction. Accordingly, he has waived all but plain error. *State v. Lee*, 180 Ohio App.3d 739, 2009-Ohio-299, ¶7; Crim.R. 30(A); Crim.R. 52(B).

**{¶29}** In order to have plain error under Crim.R. 52(B), there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 431, 1997-Ohio-204; see *State v. Johnson*, 3d Dist. No. 2-98-39, 1999-Ohio-825.

{¶30} In order for a defendant to assert the affirmative defense of defense of others, it must be shown that he was "protecting another person from immediate danger of bodily harm from an assailant as long as the other person could assert the defense himself." *State v. Streight*, 3d Dist. No. 2-01-23, 2002-Ohio-672, citing *State v. Wenger* (1979), 58 Ohio St.2d 336. In order make a valid claim of self-defense, the following showing must be made:

> (1) * * * [he] was not at fault in creating the situation giving rise to the affray; (2) * * * [he] has [sic] a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of * * * force; and (3) * * * [he] must not have violated any duty to retreat or avoid the danger.

*State v. Bowman*, 3d Dist. No. 9-01-47, 2002-Ohio-3391, ¶11, quoting *State v. Williford* (1990), 49 Ohio St.3d 247, 249. The critical inquiry of a self-defense claim is into the defendant's state of mind. *State v. Moore*, 3d Dist. Nos. 1-06-89, 1-06-96, 2007-Ohio-3600, ¶59. A defendant is only entitled to a jury instruction on the defense of others where he introduces sufficient evidence that, if believed, raises a reasonable question as to the existence of the issue. *State v. Davis*, 5th Dist. No. 2003 CA 429, 2004-Ohio-7056, ¶14, citing *State v. Melchior* (1978), 56 Ohio St.2d 15.

{¶31} In the case sub judice, in order for a defense of others instruction to be warranted, Kramer must have shown that either Pratt or Strong was not at fault in creating the confrontation with Miguel; that they believed they were in

imminent danger of death or serious bodily harm; that their only means of escape was through the use of force against Miguel; and, that they did not violate the duty to retreat or avoid the danger.

{¶32} At trial, testimony was presented that either Kramer, Pratt, or Strong was at fault in creating the confrontation with Miguel. Pratt testified that he and Strong both walked outside the bar, and upon seeing Miguel and Kramer in an altercation, they both surrounded Miguel. Strong testified that, when he and Pratt walked outside of the bar, Miguel and Kramer were down slightly away from the bar, and he and Pratt went down by them. Detective Williamson testified that Kramer told him that he approached Miguel outside the bar, and Miguel testified that Kramer, Pratt, and Strong all insisted upon fighting him outside of Sinner's Bar. Additionally, Kramer testified that, when Pratt and Strong joined in the confrontation, Miguel did swing the knife at them, but both of them advanced on Miguel.

{¶33} Furthermore, the details of the altercation as testified to by Kramer, Pratt, and Strong all contained marked differences, thereby diminishing the credibility of their testimony that they could not retreat from the altercation and that the injury Kramer inflicted upon Miguel was necessary for their self-defense.

{¶34} In viewing the totality of the evidence presented, we find that Kramer did not present sufficient evidence to raise the issue of defense of others,

such that the trial court did not commit plain error in failing to give the instruction. Furthermore, even if the defense of others instruction would have been given, it is an untenable position that the outcome of the trial would have been different, as the jury did not give credibility to Kramer's argument that he struck Miguel in his own self-defense, thereby making it extremely unlikely that the jury would have found Kramer struck Miguel in defense of Pratt or Strong.

{¶35} Accordingly, we overrule Kramer's first assignment of error.

*Assignment of Error No. II*

{¶36} In his second assignment of error, Kramer argues that he was denied the effective assistance of counsel. Specifically, he contends that trial counsel's failure to request an instruction on the defense of others, where there were sufficient facts presented to raise the defense, prejudiced the outcome of the trial. We disagree.

{¶37} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of syllabus. "Reasonable

probability" is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Waddy* (1992), 63 Ohio St.3d 424, 433, superseded by constitutional amendment on other grounds as recognized by *State v. Smith*, 80 Ohio St.3d 89, 103, 1997-Ohio-355.

{¶38} Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Malone* (1989), 2d Dist. No. 10564, 1989 WL 150798. "Ineffective assistance does not exist merely because counsel failed 'to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id., quoting *Smith v. Murray* (1986), 477 U.S. 527.

{¶39} "In order to show that an attorney's conduct was deficient or unreasonable, the appellant must overcome the presumption that the attorney provided competent representation by showing that the attorney's actions were not trial strategies prompted by 'reasonable professional judgment.'" *State v. Price*, 3d Dist. No. 13-05-03, 2006-Ohio-4192, ¶7, citing *Strickland v. Washington* (1984), 466 U.S. 668, 689. There is a strong presumption that trial counsel's decisions fall within the wide range of reasonable professional assistance, Id., citing *State v. Sallie*, 81 Ohio St.3d 673, 675, 1998-Ohio-343, and decisions related to trial strategy are insufficient to establish an ineffective assistance claim.

*State v. Tosco*, 3d Dist. No. 9-08-21, 2009-Ohio-408, ¶ 36 citing *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, ¶101.

**{¶40}** Here, we found in Kramer's first assignment of error that he did not present sufficient evidence to entitle him to a defense of others jury instruction. Thus, even if trial counsel would have requested such an instruction, there was no requirement that it be given. Consequently, any failure of trial counsel to request the instruction would not have affected the outcome of the trial.

**{¶41}** Accordingly, we overrule Kramer's second assignment of error.

*Assignment of Error No. III*

**{¶42}** In his third assignment of error, Kramer argues that his conviction was against the manifest weight of the evidence. Specifically, Kramer asserts that two other witnesses corroborated his testimony that he acted in self-defense, and Miguel's testimony was shown to be unreliable because it was not corroborated by any other witnesses and because many portions of his testimony were shown to be false. We disagree.

**{¶43}** When an appellate court analyzes a conviction under the manifest weight standard, it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction

must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, superseded by constitutional amendment on other grounds as stated by *Smith,* 80 Ohio St.3d 89, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.

**{¶44}** In the case at bar, Miguel testified that Kramer instigated the altercation outside of Sinner's Bar as he was walking away; that he did walk back towards Kramer after he left the bar, and even stated he wanted to fight Kramer; that, however, Kramer, Pratt, and Strong all surrounded him, and he felt he was in danger; that he did not threaten them with a knife, but removed his keys from his pocket in order to defend himself; and, that Kramer broke a beer bottle on the ground and stabbed him.

**{¶45}** On the other hand, Kramer testified that Miguel instigated the altercation outside of the bar; that Miguel attempted to attack him with a knife; that he hit Miguel with a beer bottle only to defend himself; and, that he told Miguel that he needed to leave multiple times during the confrontation, but, once Miguel brandished a knife, he believed that he was unable to safely retreat.

**{¶46}** Additionally, Pratt and Strong also testified on behalf of Kramer that Miguel brandished a knife and was threatening them with it during the altercation. However, both their testimonies indicated that they made a specific effort to join

in the altercation, and Kramer also admitted that he also approached Miguel. Furthermore, although Kramer, Strong, and Pratt all insisted that Miguel had a knife, testimony was presented that a knife was not found with Miguel's clothes, at the scene of the altercation, or along the route in which Miguel walked after the altercation, and, during Kramer's initial interview with Detective Williamson, he only indicated that Miguel had something in his hand; only later did Kramer indicate that it was a knife.

{¶47} Therefore, although three eyewitnesses testified that Miguel's stabbing was in self-defense, each of these witnesses also presented some testimony indicating that Kramer was the instigator of the altercation outside the bar, and that Miguel was forced to defend himself once he was surrounded by Kramer, Pratt, and Strong. Additionally, Pratt and Strong were Kramer's friends, thereby likely diminishing the credibility of their testimony. Furthermore, the injuries sustained by Miguel are not consistent with Kramer's account of the altercation, as he testified that he merely broke the bottle over Miguel's neck and shoulder, but Miguel's injuries, including a severe laceration to his jugular vein, were more consistent with Miguel's account of the altercation that Kramer stabbed him with a broken bottle.

{¶48} Nevertheless, testimony was presented indicating that Miguel came to Sinner's Bar in a rage to confront Kramer. Miguel testified that he sent

harassing and threatening text messages to Crawford and Kramer after he saw them at the boxing event, and that he told Kramer he wanted to fight him when they met outside Sinner's Bar. Also, Miguel admitted to drinking several alcoholic beverages that evening and ingesting illegal drugs, and Jared Sorg from Primo's Bar testified to Miguel's intoxication and confrontational demeanor that evening.

{¶49} However, testimony was also presented indicating that Kramer could have instigated the altercation with Miguel, as he testified that he approached Miguel outside Sinner's Bar; that he was intoxicated that evening; and, that he was also in an altercation that same evening with his ex-girlfriend and his cousin's boyfriend.

{¶50} Throughout the testimony presented, it was clear that there were two versions of what occurred outside of Sinner's Bar, and there was certainly evidence presented to support both versions. Each of the eyewitnesses to the stabbing, Kramer, Miguel, Pratt, and Strong, were impeached with their prior criminal convictions, which diminished their credibility, and each gave testimony that conflicted with each other's version of the events. Accordingly, the resolution of the case came down to a question of credibility, and, being that the jury is in the best position to weigh witness credibility, *State v. Dickinson*, 3d Dist. No. 11-08-08, 2009-Ohio-2099, ¶45, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio

St.3d 77, and that there was a great deal of evidence indicating that Kramer was not acting in self-defense, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice. Consequently, we find that Kramer's conviction for aggravated assault was not against the manifest weight of the evidence.

**{¶51}** Accordingly, we overrule Kramer's third assignment of error.

**{¶52}** Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*