The STATE of Ohio, Appellee and Cross–Appellant,

v.

ORWICK, Appellant and Cross–Appellee;  Blanchard Valley Regional
Health Center et al., Appellees and Cross–Appellees.

[Cite as *State v. Orwick,* 153 Ohio App.3d 65, 2003-Ohio-2682.]

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5–02–46.

May 27, 2003.

Robert A. Fry, Hancock County Prosecuting Attorney, for appellee and cross-appellant.

Garth W. Brown, for appellant and cross-appellee.

Michael J. Malone, for cross-appellees.

WALTERS, Judge.

{¶ 1} Defendant-appellant, James A. Orwick, appeals from a Hancock County Common Pleas Court judgment ordering the disclosure of a document relating to statements he made to a licensed social worker concerning incidents in which he allegedly sexually abused his stepdaughters. The trial court found that the document fell within an exception for communications indicating a clear-and-present danger to the client or other persons provided by R.C. 2317.02(G)(1)(a). Orwick argues that the exception is limited to circumstances in which the client is the object of the abuse and does not encompass the client's abuse of other children. However, sexual abuse of a child, whether the client or a victim of the client, presents a clear-and-present danger to that child. The state of Ohio cross appeals, arguing that once an exception is found to apply, the privilege is waived to all communications between Orwick and his counselor made during the same consultation and all other communications relating to the same subject. Because the clear-and-present-danger exception does not provide a sweeping waiver of all confidential communications, the trial court did not err in limiting disclosure to

communications falling within the scope of the exception. Accordingly, we affirm the judgment of the trial court.

{¶ 2} James Orwick was arrested on a warrant issued by the Hancock County Grand Jury on November 20, 2001, alleging one count of gross sexual imposition, thirteen counts of rape, and fifteen counts of sexual battery of his stepdaughters. Orwick was arraigned on November 28, 2001, and subsequently released on $100,000 bond. A jury trial was scheduled for June 3, 2002. However, due to scheduling problems and other procedural issues, trial was continued until July 31, 2002.

{¶ 3} On July 26, 2002, the state subpoenaed Dr. Donald Evert, M.D., his records custodian, the records custodian of Blanchard Valley Regional Health Center ("BVRHC"), and Pat Weaver, a licensed social worker from the hospital, requesting all documents relating to counseling sessions with Orwick. The state alleged that on or about January 20, 2002, Orwick telephoned his wife and informed her that he was going to commit suicide. Orwick was admitted to BVRHC, where he was counseled by Weaver. After his release from the hospital, Orwick spoke with Dr. Evert and staff at his office. The matter came on for hearing on July 29, 2002.

{¶ 4} At the hearing, Orwick objected to the subpoena, arguing that the documents were privileged communications protected from disclosure by R.C. 2317.02(G)(1). Counsel for the subpoenaed witnesses appeared at the hearing with two packets of documents under seal, indicating that he had been instructed to challenge the subpoena as violative of R.C. 2317.02. One packet, later marked as Court's Exhibit 1, contained the subpoenaed documents related to Orwick's hospitalization at BVRHC. The other packet, subsequently marked as Court's Exhibit 2, contained the subpoenaed documents from the counseling sessions with personnel at Dr. Evert's office.

{¶ 5} Upon in camera inspection of the packets, the court ruled that no documents would be disclosed from Court's Exhibit 1. However, the court found that one document in Court's Exhibit 2, dated March 8, 2002, authored by Daniel King, a licensed independent social worker for Dr. Evert's office, was excepted from the counselor-patient privilege and was discoverable under R.C. 2317.02(G)(1)(a) because it contained indications of present or past child abuse.

{¶ 6} Orwick initiated the instant appeal, and the state cross-appealed. BVRHC, Dr. Evert, and King perfected a separate appeal also challenging the order, in which the state also cross-appealed with an identical assignment of error.[1]

{¶ 7} Orwick presents the following assignment of error for our review:

---

1. See Hancock App. No. 5–02–48, 153 Ohio App.3d 88, 2003-Ohio-2681, 791 N.E.2d 463.

"The trial court erred in ordering the release of a privileged communication between a licensed independent social worker and his client."

*Constitutionality of R.C. 2317.02(G)(1)(a)*

{¶ 8} As an initial matter, Orwick contends that R.C. 2317.02(G)(1)(a) is unconstitutional as applied and void for vagueness. The record reveals that Orwick did not challenge the constitutionality of the statute at the trial court level. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal."[2] This rule applies both to Orwick's claim that the statute is unconstitutional as applied and void for vagueness.[3] Both claims were apparent but not made in the trial court.

{¶ 9} Orwick claims that the trial court was attempting to expedite the hearing to accommodate trial, asserting that he was not provided an opportunity to challenge the constitutionality of the statute. As support, Orwick quotes the following statement from the court made in the latter part of the hearing after in camera inspection of the documents: "Mr. Fry, Mr. Brown, in light of the lateness of the day here, I'm really not inclined to hear any legal argument at this point. * * *." However, the court continued:

"THE COURT: * * * I have received what I believe to be from counsel any legal authority they have in the context of copies of reported and unreported cases. Mr. Brown, I really have not gotten anything from you, although we have shared information with you throughout the entire day. Do you have any specific cases you want to cite to the Court?

"MR. BROWN: No, not at this time."

{¶ 10} Review of the remainder of the hearing shows that Orwick was presented an opportunity to raise his constitutional challenges. The court opened the proceedings specifically inquiring whether defense counsel was prepared to address legal issues related to the state's motion. Defense counsel responded: "Your Honor, we are prepared to argue from a legal standpoint the issues set forth in the State's motion." Thereafter, defense counsel participated in cross-examination, reiterating and expounding upon objections to admission of evidence as privileged communications. Before conducting the in camera inspection, the court inquired whether defense counsel had anything further for the record. Defense counsel declined. At the end of the hearing, the court again inquired

---

2. *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, at syllabus. See, also, *Gibson v. Meadow Gold Dairy* (2000), 88 Ohio St.3d 201, 204, 724 N.E.2d 787.

3. *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 170, 522 N.E.2d 524.

whether counsel had anything for the record.  Defense counsel remained silent. Therefore, having failed to raise the constitutional challenges in the trial court, those arguments are waived for purposes of appeal.[4]

### Application of R.C. 2317.02(G)(1)(a)

■  {¶ 11} Turning to the context of the statute, R.C. 2317.02(G)(1) provides that communications made by a client to a licensed social worker and the social worker's advice to that client are generally privileged.[5]  Exceptions are set forth in R.C. 2317.02(G)(1)(a) through (f) and (G)(2).  Specifically, exception (G)(1)(a) provides that a communication is excepted from the privilege when:

"(a) The communication or advice indicates clear and present danger to the client or other persons.  For the purposes of this division, cases in which there are indications of present or past child abuse or neglect of the client constitute a clear and present danger."

{¶ 12} Orwick argues that, despite the broad exception for "clear and present danger to the client or *other persons*," the phrase "child abuse or neglect *of the client* " in the second sentence specifically limits application of the exception in child abuse or neglect cases to instances where the client is the party being abused or neglected.[6]  Orwick also cites that he was under indictment at the time he made the statements, contending that he "did not pose a pressing immediate danger under the watchful eye of the court while released on bond with a no-contact order between [him] and the alleged victims, as a condition of bond, and, therefore, nothing he said to his counselor could cause a clear and present danger."  Alternatively, Orwick asserts that the March 8, 2002 document does not constitute an indication of past or present child abuse.  He avers that "[o]nly under circumstances where a patient clearly admits 'past or present child abuse or neglect of the client' can disclosure occur."

{¶ 13} When considering pretrial discovery, the results of an in camera review by a judge, and the judge's determinations of what is discoverable are evaluated by an appellate court under an abuse-of-discretion standard.[7]  "[W]hen applying an abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court but must be guided by a presumption that the findings of the trial court are correct."[8]  An abuse of discretion occurs when

---

4.  *Gibson*, 88 Ohio St.3d at 204, 724 N.E.2d 787.

5.  *Voss v. Voss* (1989), 62 Ohio App.3d 200, 205, 574 N.E.2d 1175.

6.  Emphasis added.

7.  *Radovanic v. Cossler* (2000), 140 Ohio App.3d 208, 213, 746 N.E.2d 1184.

8.  *Focke v. Focke* (1992), 83 Ohio App.3d 552, 555, 615 N.E.2d 327.

a court renders a decision that is arbitrary, unreasonable or unconscionable.[9] "A decision is unreasonable if there is no sound reasoning process that would support that decision."[10] "[T]he result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."[11]

## Scope of the Exception

{¶ 14} Evid.R. 501 provides that issues of privilege are governed by statute and by principles of common law as interpreted by Ohio courts. "The traditional policy of the law is to require the disclosure of all information by those in possession of it, in order that the truth may be discovered and justice prevail."[12] The granting of privileges against disclosure constitutes an exception to this general rule, and courts tend to construe such privileges strictly and to narrow their scope since they obstruct the discovery of the truth.[13] Because the counselor-patient privilege is entirely statutory and in derogation of common law, it must be strictly construed against the party seeking to assert it.[14]

{¶ 15} Although not necessarily determinative, we note that the word "of," as in "of the client," can be commonly defined both as "a function word to indicate the agent or doer of an act or action" and as "a function word indicating the object of an action."[15] Moreover, even if the second sentence of division (G)(1)(a) is interpreted to refer to situations in which the client is the object of the abuse or neglect, it is by no means an exclusive definition of circumstances presenting a clear-and-present danger to the client or other persons. It is obvious that the purpose of the exception is to protect persons subject to harm at the hands of another. To hold that the sexual abuse of a child, whether the child is the client or a victim of the client, does not present a clear-and-present danger to that child

---

9. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

10. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

11. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 473 N.E.2d 264.

12. *In re Briggs* (July 9, 1997), 9th Dist.App. No. 18117, 1997 WL 416331.

13. *Belichick v. Belichick* (1974), 37 Ohio App.2d 95, 96–97, 66 O.O.2d 166, 307 N.E.2d 270.

14. *Wargo v. Buck* (1997), 123 Ohio App.3d 110, 120, 703 N.E.2d 811, citing *Ohio State Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 140, 541 N.E.2d 602.

15. Webster's Third New International Dictionary (1986) 1565.

would be nonsensical.[16]

{¶ 16} Furthermore, R.C. 2151.421(A)(1)(a) requires that persons engaged in social work or the practice of professional counseling who know or suspect that a child under eighteen years of age *"has suffered* or faces a threat of suffering any physical or mental wound, injury, disability or condition of a nature that reasonably indicates abuse or neglect of the child" shall immediately report that knowledge or suspicion to the public children services agency or a peace officer.[17] At the time the subject document was drafted, at least one of Orwick's stepdaughters was under eighteen years of age. The report is to contain (1) the name and addresses of the child and the child's parents or person having custody of the child; (2) the child's age and nature and extent of the known or suspected injuries, abuse, or neglect; and (3) information related to the cause or threat of the known or suspected injury, abuse or neglect.[18] Where a statute requires an individual to report conduct or a circumstance to a law-enforcement officer, the former may generally testify to the contents of the required disclosure without violating any corresponding privilege.[19] If the details of the conduct or circumstance are required to be reported, regardless of whether the individual or entity required to report has in fact made the report,[20] the only purpose that sustaining the privilege could now serve would be to obstruct the course of justice.[21] Our conclusion is bolstered by R.C. 2151.421(H)(1), which explicitly provides that "[i]n a criminal proceeding, the report is admissible in evidence in accordance with the Rules of Evidence and is subject to discovery in accordance with the Rules of Criminal Procedure."[22]

### Defendant's Status

{¶ 17} As to Orwick's argument that he could not pose a clear-and-present danger because he was under indictment, released on bond, and subject to a no-contact order, it is apparent that the legislature has gone to great lengths to

---

16. *State v. Wilkins* (Aug. 5, 1996), Licking App. No. 95–CA–74, 1996 WL 488280.

17. Emphasis added.

18. R.C. 2151.421(C)(1) through (3).

19. *State v. Jones* (2000), 90 Ohio St.3d 403, 408–409, 739 N.E.2d 300, citing *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O.2d 366, 197 N.E.2d 548.

20. Id. at 408, 739 N.E.2d 300.

21. Id. at 409, 739 N.E.2d 300, citing *Antill,* 176 Ohio St. at 65, 26 O.O.2d 366, 197 N.E.2d 548.

22. R.C. 2151.421(H)(1).

protect "our most vulnerable population, our children." [23]   In this regard, the legislature has chosen to bestow special protection upon children by excepting from the privilege provided by R.C. 2317.02(G)(1) communications containing *"indications* of present or *past* child abuse or neglect" and implementing a mandatory reporting requirement when a designated individual *"knows or suspects* " that a child *"has* suffered" abuse without regard to the time of the abuse or reference to the perpetrator's status.   Affording due deference to the legislature's evident intent to protect children and the mandate that the counselor-patient privilege be strictly construed against the party seeking to assert it, we do not find that disclosure is precluded when a party is under indictment, released on bond, and/or subject to a no-contact order.

## The Trial Court's Application of the Exception

{¶ 18} Turning to the content of the March 8, 2002 document, we again note that the legislature has specifically directed that "cases in which there are *indications* of present or past child abuse or neglect of the client constitute a clear and present danger." [24]   "Indication" is defined in part as "something (as a signal, sign, suggestion) that serves to indicate[;]" a symptom or particular sign showing the probable existence of a certain circumstance. [25]   Therefore, the relevant inquiry is whether the document contains a signal, sign, or suggestion that shows the probable existence of abuse or neglect.   In this instance, the trial court reviewed the context of the document and surrounding circumstances and concluded that the exchange between King and Orwick, as reported by King, contained indications of present or past child abuse or neglect.   Upon review of the record, we cannot find that the trial court's decision was arbitrary, unconscionable, unsupported by the record, or that no sound reasoning process would support the determination.

{¶ 19} Accordingly, Orwick's assignment of error is overruled.

{¶ 20} The state of Ohio presents the following assignment of error for our review:

"The trial court erred in ordering the release of only one document rather than all documents created and utilized in all the counseling sessions by the independent social workers and their client."

■   {¶ 21} In its assignment of error, the state contends that R.C. 2317.02(G)(1)(a) compels disclosure of "all communications made to the two social workers, and any documentation thereof[.]"   The state cites *State v. McDer-*

---

23.   *State v. Collins* (2000), 89 Ohio St.3d 524, 534, 733 N.E.2d 1118.

24.   Emphasis added.

25.   Webster's Third New International Dictionary (1986) 1150.

*mott* [26] and *Natl. Bank v. Cincinnati Ins. Co.* [27] for the proposition that once the court finds a specific statutory exception to be applicable to any of Orwick's communications, the privilege is waived as to entirety of the communications between Orwick and his counselor made during the same consultation and all other communications relating to the same subject.

{¶ 22} Initially, we find *McDermott* and *Natl. Bank* to be distinguishable, as they both dealt with the client's destruction of the confidentiality underlying the attorney-client privilege by voluntarily disclosing confidential communications to a third party.[28] Furthermore, we are mindful that the Ohio Supreme Court "has repeatedly and consistently refused to engraft judicial waivers, exceptions, or limitations into the testimonial privilege statutes where the circumstances of the communication fall squarely within the reach of the statute." [29] "Judicial policy preferences may not be used to override valid legislative enactments, for the General Assembly should be the final arbiter of public policy." [30]

{¶ 23} Through R.C. 2317.02(G)(1), the legislature has extended a shield of privacy over communications between social workers and counselors and their clients. The intent of the privilege is to encourage clients to be completely candid with the counselor, thus enabling more complete treatment.[31] In other words, "the purpose of this privilege is to encourage [clients] to make a full disclosure of their symptoms and conditions to their [counselors] without fear that such matters will later become public." [32] Nothing in R.C. 2317.02 supports the state's characterization of the exception at issue here as a sweeping waiver providing complete disclosure. Those cases dealing with the breadth of exceptions to statutory privileges generally apply a limited waiver, restricting the scope of disclosure to communications falling within the confines of the exception.[33] The mere fact that some statements are excepted from the privilege does

---

**26.** *State v. McDermott* (1992), 79 Ohio App.3d 772, 778–779, 607 N.E.2d 1164.

**27.** *Mid–American Natl. Bank & Trust Co. v. Cincinnati Ins. Co.* (1991), 74 Ohio App.3d 481, 486, 599 N.E.2d 699.

**28.** *McDermott*, 79 Ohio App.3d at 777, 607 N.E.2d 1164; *Natl. Bank*, 74 Ohio App.3d at 489, 599 N.E.2d 699.

**29.** *In re Wieland* (2000), 89 Ohio St.3d 535, 538, 733 N.E.2d 1127.

**30.** Id., quoting *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672.

**31.** See *Ohio State Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 139–140, 541 N.E.2d 602.

**32.** *Antill*, 176 Ohio St. at 64–65, 26 O.O.2d 366, 197 N.E.2d 548.

**33.** See, e.g., *State v. Spencer* (1998), 126 Ohio App.3d 335, 340–342, 710 N.E.2d 352 (Dyke, P.J., concurring); *Hayes v. Cleveland Pneumatic Co.* (1993), 92 Ohio App.3d 36, 44, 634

not compel disclosure of all confidential communications between a client and his counselor, physician, or therapist. Although the privilege is to be narrowly construed, we are not willing to broaden the scope of an exception where the remaining communications fall squarely with the purview of the statute. Therefore, the trial court did not err in limiting disclosure to communications falling within the scope of R.C. 2317.02(G)(1)(a).

{¶ 24} Accordingly, the state's assignment of error is overruled.

{¶ 25} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the Hancock County Common Pleas Court.

Judgment affirmed.

SHAW and CUPP, JJ., concur.

N.E.2d 228; *People v. Wharton* (1991), 53 Cal.3d 522, 280 Cal.Rptr. 631, 648–649, 809 P.2d 290; *Seltrecht v. Bremer* (App.1995), 195 Wis.2d 880, 889–890, 536 N.W.2d 727; *Lane v. Sharp Packaging Systems, Inc.* (2002), 251 Wis.2d 68, 90, 640 N.W.2d 788; *Gen. Motors Corp. v. McGee* (Fla.App. 4 Dist 2002), 837 So.2d 1010, 1031; *Cobell v. Norton* (D.C.C.2003), 213 F.R.D. 69, 74; *In re Doe* (Tex.App.-Austin 2000), 22 S.W.3d 601, 610; *In re Vargas* (C.A.10, 1983), 723 F.2d 1461, 1467; *R.K. v. Ramirez* (Tex.1994), 887 S.W.2d 836, 844.