[Cite as *State v. Richardson*, 2018-Ohio-4254.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

STATE OF OHIO, :

    Plaintiff-Appellee/Cross-Appellant, :     CASE NOS.  CA2018-04-043
    CA2018-04-044

    - vs - :     O P I N I O N
    10/22/2018

:

BROOKE SKYLAR RICHARDSON, :

    Defendant-Appellant/Cross-Appellee. :

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR33292

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee/cross-appellant

Rittgers & Rittgers, Charles H. Rittgers and Neal D. Schuett, 12 East Warren Street, Lebanon, Ohio 45036, for appellant/cross-appellee

**RINGLAND, J.**

{¶ 1} This is an interlocutory appeal wherein both Brooke Richardson and the state of Ohio appeal a decision of the Warren County Court of Common Pleas on a motion in limine. For the reasons detailed below, we affirm in part, reverse in part, and remand this matter to the trial court for further proceedings.

{¶ 2} On April 26, 2017, Richardson had a medical appointment with Dr. William Andrew at Hilltop Obstetrics and Gynecology. At this appointment, Dr. Andrew informed

Richardson that she was in the late stages of pregnancy. Upon learning of her pregnancy, Richardson had certain reactions and made statements to Dr. Andrew that are at issue in this appeal.

{¶ 3} On July 12, 2017, Richardson returned to Hilltop for a medical appointment with Dr. Casey Boyce. Dr. Boyce was not present at the time of Richardson's prior medical appointment. Dr. Andrew and a medical assistant took Dr. Boyce aside and informed her about the prior appointment and asked her to find out what happened to the baby.

{¶ 4} Dr. Boyce entered the examination room and asked Richardson about her pregnancy and the baby. Richardson immediately began crying and informed Dr. Boyce that she had gone into labor, delivered a stillborn baby, and buried the baby in her backyard. Richardson told Dr. Boyce that she kept the pregnancy and the delivery a secret from her parents and that nobody else was aware of the situation.

{¶ 5} Afterwards, Dr. Boyce went to Dr. Andrew and the two discussed how to proceed. Dr. Andrew told Dr. Boyce that he would contact the chief of police in Middletown, which he attempted to do by leaving a message. Before the chief returned Dr. Andrew's call, Dr. Boyce called the Carlisle Police Department and made a report.

{¶ 6} On August 4, 2017, Richardson was indicted on charges of aggravated murder, involuntary manslaughter, endangering children, tampering with evidence, and abuse of a corpse. Prior to trial, Richardson filed a motion in limine regarding the physician-patient privilege. The state also moved for a final ruling on the issue of the physician-patient privilege. Following a hearing, the trial court granted in part, and denied in part, Richardson's motion in limine. Richardson now appeals the trial court's decision with the state also cross-appealing. We now consider the three assignments of error on appeal.

{¶ 7} Richardson's Assignment of Error:

{¶ 8} THE TRIAL COURT ERRED IN DETERMINING THAT DEFENDANT-

APPELLANT'S STATUTORILY-GRANTED PHYSICIAN-PATIENT PRIVILEGE WAS WAIVED.

{¶ 9} The state's Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT APPLIED THE PHYSICIAN-PATIENT PRIVILEGE TO COMMUNICATIONS AND ADVICE BETWEEN DEFENDANT AND DR. ANDREW AND HIS STAFF AND THE MEDICAL RECORDS RELATING TO DEFENDANT'S APRIL 26, 2017 APPOINTMENT.

{¶ 11} The state's Assignment of Error No. 2:

{¶ 12} THE TRIAL COURT IMPROPERLY DENIED THE STATE THE OPPORTUNITY TO CROSS-EXAMINE DRS. ANDREW AND BOYCE REGARDING THE STATEMENTS IN THEIR RECENTLY-SUBMITTED AFFIDAVITS.

{¶ 13} Because Richardson's appeal and the state's cross-appeal are interrelated, we will address all issues together. A discovery dispute is ordinarily reviewed under an abuse-of-discretion standard. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13. However, whether the information sought is confidential and privileged from disclosure is a question of law that is reviewed de novo. *Id.* "When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate." *Id.*

{¶ 14} The physician-patient privilege is a statutory privilege that did not exist at common law. *State Med. Bd. v. Miller*, 44 Ohio St.3d 136, 140 (1989). As a result, any statutory privilege must be strictly construed against the party seeking to assert it and may be applied only to those circumstances specifically named in the statute. *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, ¶ 15; *State v. Orwick*, 153 Ohio App.3d 65, 2003-Ohio-2682, ¶ 14 (3d Dist.).

{¶ 15} The physician-patient privilege is codified in R.C. 2317.02, which provides:

The following persons shall not testify in certain respects:

* * *

(B)(1) A physician, advanced practice registered nurse, or dentist concerning a communication made to the physician, advanced practice registered nurse, or dentist by a patient in that relation or the advice of a physician, advanced practice registered nurse, or dentist given to a patient, except as otherwise provided in this division, division (B)(2), and division (B)(3) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician or advanced practice registered nurse may be compelled to testify on the same subject.

{¶ 16} As provided in the statute, "communication" means "acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician, advanced practice registered nurse, or dentist to diagnose, treat, prescribe, or act for a patient." R.C. 2317.02(B)(5)(a). "A 'communication' may include, but is not limited to, any medical or dental, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis, or prognosis." *Id.*

{¶ 17} The physician-patient privilege is not absolute. R.C. 2917.02(B) contains a number of exceptions to the privilege. Pertinent to this case, the privilege is unavailable "if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege." R.C. 2917.02(B)(1).

{¶ 18} R.C. 2151.421 places a duty on persons with special relationships to minors to report suspected or known abuse or neglect. *Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, ¶ 32. Under R.C. 2151.421,

(B) Anyone who knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in similar circumstances to suspect, that a child under eighteen years of age, or a person under twenty-one years of age with a developmental disability or physical impairment, has suffered or faces a threat of suffering any physical or mental wound, injury,

disability, or other condition of a nature that reasonably indicates abuse or neglect of the child may report or cause reports to be made of that knowledge or reasonable cause to suspect to the entity or persons specified in this division.

### R.C. 2151.421: Definition of "child"

{¶ 19} Initially, Richardson argues that R.C. 2151.421 does not apply because there was no "reasonable cause to suspect *based on facts* that would cause a reasonable person in similar circumstances to suspect, that a *child * * * * has suffered or faces a threat of suffering any physical or mental wound." (Emphasis added.)

{¶ 20} Richardson references the provisions of the Ohio Revised Code and Ohio Administrative Code that define the terms "child," "fetus," and "stillborn." Pursuant to R.C. 2151.011(B)(6), a "child" is a "person who is under eighteen years of age." A fetus "means the developing conceptus from fourteen (14) weeks after the first day of the woman's last menstrual period until birth." Ohio Adm.Code 3701-47-01. A "stillborn" means "that an infant of at least twenty weeks of gestation suffered a fetal death." R.C. 3705.01.

{¶ 21} Richardson distills her argument as such: (1) on April 26, 2017, Dr. Andrew was aware that she was carrying a fetus, and (2) on July 12, 2017, Dr. Boyce was informed of the stillborn delivery and therefore the fetus was not born alive to satisfy the definition of "child." As a result, Richardson maintains that R.C. 2151.421 is inapplicable because she delivered a stillborn baby, which does not meet the statutory definition of "child."

{¶ 22} The argument raised by Richardson is fundamentally flawed because the issue of whether the baby was born alive figures to be an essential issue in the case. While Richardson maintains that the baby was stillborn, we note the record reveals that she equivocated on this issue during interviews with police. This court is cognizant of the realities that not every late-term pregnancy will result in the birth of a living child. However, both Dr. Andrew and Dr. Boyce were aware of Richardson's late-term pregnancy and reported their

concerns to law enforcement after learning that she had buried her baby in the backyard. Though Richardson asserts that the baby was delivered stillborn, we cannot conclude, as a matter of law, that R.C. 2151.421 is inapplicable.

{¶ 23} This conclusion is further supported by R.C. 2901.01(B), which defines a "person" as "[a]n unborn human who is viable." The term "viable" means "the stage of development of a human fetus at which there is a realistic possibility of maintaining and nourishing of a life outside the womb with or without temporary artificial life-sustaining support." R.C. 2901.01(B)(1)(c)(ii). Thus, if viability is shown, the relevant statutes provide that the individual is considered a "person," and if that person is under "eighteen years of age," then that person is considered a "child." R.C. 2151.11(B)(6). As a result, we find Richardson's argument to be without merit.

### Application of the Waiver

{¶ 24} The purpose of the physician-patient privilege is to encourage patients to make a full disclosure of their symptoms and condition to their physicians without fear that such matters will later become public. *State v. Antill*, 176 Ohio St. 61, 64-65 (1964). "Against the interest of the patient in having his condition remain confidential, must be balanced the interest of the public in detecting crimes in order to protect society." *Id.*

{¶ 25} In this case, the trial court found waiver of the privilege with respect to Dr. Boyce and ruled: (1) there was no privilege with respect to Dr. Boyce and the medical records relating to the July 12, 2017 appointment, and (2) whatever information Dr. Boyce relied upon in coming to her conclusion that she suspected child abuse is statutorily excluded from the testimonial privilege and is admissible at any stage of the trial proceedings.

{¶ 26} However, the trial court found that the privilege still applied to communications between Dr. Andrew and Richardson and ruled: (1) the medical records and the testimony of Dr. Andrew and other medical practitioners are still subject to testimonial privilege, except to

the extent Dr. Boyce relied upon this information in coming to her conclusion that she suspected child abuse, and (2) that any testimony of the medical professionals concerning Richardson's statements and reactions upon learning that she was pregnant is inadmissible.

{¶ 27} Richardson now concedes that the medical records pertaining to the April 26, 2017 appointment are not privileged, as she has expressed a limited waiver as to those documents. Thus, the issue here is whether Richardson's April 26 statements and reactions in the presence of Dr. Andrew upon learning of her pregnancy are protected by the privilege.

{¶ 28} On appeal, Richardson argues that none of the statutory exceptions to the waiver of the physician-patient privilege are applicable in this case. As a result, she maintains that the limited waiver that she did express regarding the physician-patient privilege does not include any conversation with Dr. Boyce or Dr. Andrew.[1] To the contrary, the state asserts that the physician-patient privilege has been waived and the state raises numerous arguments in support of that position.

{¶ 29} Following review, we agree with the trial court that there is no privilege with respect to Dr. Boyce and the medical records relating to the July 12, 2017 appointment. However, we find the trial court improperly applied the privilege with respect to the April 26, 2017 appointment. Furthermore, we find Richardson's statements and reactions upon learning of her pregnancy are not protected by the physician-patient privilege.

{¶ 30} As to the July 12, 2017 appointment, the physician-patient privilege is waived based on application of R.C. 2151.421. As noted above, the physician-patient privilege does not apply "if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician or advanced practice registered nurse may be compelled to testify on the same subject."

---

1. Richardson also contests other aspects of the trial court's decision. However, our resolution of this matter renders those ancillary issues moot.

- 7 -

{¶ 31} In this case, Dr. Andrew informed Dr. Boyce about Richardson's late-term pregnancy and Richardson's prior visit to Hilltop. Upon questioning, Richardson informed Dr. Boyce that she had delivered a stillborn baby and had buried the baby in the backyard. The facts conveyed to Dr. Boyce were extremely concerning, warranted further investigation, and were certainly inclusive of the type of abuse or neglect contemplated in R.C. 2151.421. As a result, we find that the information conveyed to Dr. Boyce would cause a reasonable person to suspect that a child had suffered abuse or neglect, and therefore satisfies the exception contained in R.C. 2151.421.

{¶ 32} As to the April 26, 2017 appointment, we find the physician-patient privilege is also waived based on application of R.C. 2151.421. In this case, Dr. Andrew initially saw Richardson as a patient at the April 26, 2017 appointment where he confirmed the late-term pregnancy. While being advised of this information, Richardson had certain reactions and made statements to Dr. Andrew concerning the pregnancy. Following the April 26, 2017 appointment, Dr. Andrew did not feel obligated to report any incident of child abuse and there is no evidence to suggest that such a report was required at the time.

{¶ 33} Thereafter, Hilltop attempted to contact Richardson to no avail. When Richardson returned to the office on July 12, 2017 for her appointment, Dr. Andrew and a medical assistant took Dr. Boyce aside, told her about the prior appointment, and asked Dr. Boyce to find out what had happened.

{¶ 34} After learning that the baby had been buried in Richardson's backyard, Dr. Andrew attempted to contact the chief of the Middletown Police Department to inquire about the appropriate steps forward. Before his call was returned, Dr. Boyce contacted the Carlisle Police Department and reported the incident.[2]

---

2. Dr. Boyce made the report, thus satisfying the reporting requirements for both physicians, as R.C. 2151.421(A)(1)(c) provides that if two or more physicians suspect abuse or neglect, then they may designate one of them to make the report.

{¶ 35} The exclusion of testimony related to Richardson's statements and reactions in this instance does not further the purposes of the physician-patient privilege. "[T]he only purpose that sustaining the privilege can now serve is to obstruct the course of justice." *Jones*, 90 Ohio St.3d at 409. Though the unborn baby was appropriately considered a fetus the last time Dr. Andrew saw Richardson as a patient, we see no reason to limit the suspicions that a medical professional may have after being apprised of additional developments. Here, Dr. Andrew saw Richardson as a patient and observed her to be in the advanced stages of pregnancy. Upon being advised of the unique facts of this case, we do not find it unreasonable for Dr. Andrew to reconsider his interactions with Richardson in light of potential reporting requirements under R.C. 2151.421. As a result, we find no privilege with respect to the statements and reactions between Dr. Andrew and Richardson during the April 26, 2017 appointment.

{¶ 36} We note that the trial court distinguished two cases that address the nature and waiver of the physician-patient privilege. However, in both cases, the Supreme Court was addressing the waiver of privilege with respect to a separate statute, R.C. 2921.22, that mandates reporting of any gunshot or stab wound treated by the person if the person knows or has "reasonable cause to believe resulted from an offense of violence."

{¶ 37} In *State v. Antill*, 176 Ohio St. 61 (1964), the court held that under the predecessor statute to R.C. 2921.22(B), a physician under the obligation to report may testify, without violating the physician-patient privilege, as to "the description of the wounded person, as to his name and address, if known, and as to the description of the nature and location of such a wound, obtained by examination, observation and treatment of the wound." *Id.*, paragraph four of the syllabus.

{¶ 38} Similarly, *State v. Jones*, 90 Ohio St. 3d 403 (2000), involved a situation where the physician-patient privilege did not prevent the admission of testimony that the defendant's

hand injury was a fist-to-mouth injury due to the presence of an organism found almost exclusively on dental plaque. *Id.* at 408.[3] The evidence was a key component in the state's circumstantial case since testimony revealed that the victim had been struck in the face with a "considerable amount of force" that broke her jaw. *Id.* at 407. Restating the holding in *Antill*, the court found that the physician was permitted to "testify, without violating the physician-patient privilege, as to the description of the wounded person, as to his name and address, if known, and as to the description of the nature and location of such wound, obtained by examination, observation and treatment of the victim." *Id.* at 409.

**{¶ 39}** The facts of this case highlight the dissimilarities between this matter and the situations addressed in *Antill* and *Jones*. Though all cases involve application of the physician-patient privilege and the issue of waiver, the physicians in *Antill* and *Jones* treated patients with observable injuries and could testify as to the description of the injury and any identifying information that was obtained. In both cases, the court found that, since the description of the wounds had already been reported, "the only purpose that sustaining the privilege can now serve is to obstruct the course of justice." *Jones* at 409; *Antill* at 65.

**{¶ 40}** Here, neither Dr. Boyce nor Dr. Andrew were aware of any specific injuries that Richardson's baby had incurred, rather they had been made aware of facts in physician-patient communications that led them to believe that Richard's baby had potentially been abused or harmed. Therefore, the type of particularized testimony that was presented in *Jones* and *Antill* concerning observable injuries by a treating physician is unavailable. Rather, this case presents an entirely different set of factual circumstances.

**{¶ 41}** In considering the competing interests, we fail to see how applying the privilege to Richardson's statements and reactions furthers the purposes of the physician-

---

3. We note that *Jones* considered whether counsel was ineffective in failing to object or prevent testimony arguably protected by the physician-patient privilege.

patient privilege above the interest of the public in detecting crimes in order to protect society. *Antill*, 176 Ohio St. at 65. In this case, Richardson told Dr. Boyce that she kept her pregnancy, the delivery, and the burial in her backyard a secret from everyone. As a result of the communications that occurred between Richardson, Dr. Andrew, and Dr. Boyce, both doctors reported the substance of their communications with law enforcement in compliance with R.C. 2151.421.

{¶ 42} As a result, we conclude that the physician-patient privilege between Richardson and Dr. Andrew, Dr. Boyce, and the medical staff who observed the interactions is waived by application of R.C. 2151.421. This includes Richardson's statements and reactions relating to her pregnancy with Dr. Andrew and the statements and reactions she expressed to Dr. Boyce. As a result, we overrule Richardson's assignment of error, and sustain the state's cross-assignment of error to the extent addressed above. Having resolved this matter based upon the lack of privilege, this court need not consider the additional arguments made by Richardson and the state.

{¶ 43} Finally, the state also argues the trial court erred by denying its request for a continuance to provide the state an opportunity to cross-examine Dr. Andrew and Dr. Boyce at the final hearing to address the issue of the physician-patient privilege. We find this issue is now moot based on our resolution of the state's first assignment of error. As there is no longer an existing case or controversy to decide regarding this issue, the state's second assignment of error is dismissed as moot.

{¶ 44} Judgment affirmed in part, reversed in part, and remanded.

S. POWELL, P.J., and HENDRICKSON, J., concur.

- 11 -