[Cite as *In re H.P.*, 2022-Ohio-778.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| IN RE: H.P. | | C.A. Nos. | 29973 |
| | | | 29975 |

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      DN 20-10-680

DECISION AND JOURNAL ENTRY

Dated: March 16, 2022

CARR, Presiding Judge.

{¶1}    Appellants, A.S. ("Mother") and T.P. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated their minor child dependent and placed the child in the temporary custody of Summit County Children Services Board ("CSB").  This Court affirms.

I.

{¶2}    Mother is the biological mother of H.P., born October 7, 2020.  Father is the child's alleged father, but paternity was not established during the relevant proceedings in the trial court.

{¶3}    On October 15, 2020, CSB filed a complaint, alleging that H.P. was an abused and dependent child because, among other reasons, Mother had tested positive for fentanyl and methamphetamine at the hospital shortly before H.P. was born.  The complaint further alleged that H.P. had remained in the neonatal intensive care unit ("NICU") for several days to be observed for symptoms of drug withdrawal; the infant exhibited mild symptoms of withdrawal; and the child

would be released to the home where Mother resided with Father and each parent had a history of unresolved substance abuse problems.

{¶4}  Following the adjudicatory hearing, the trial court found that CSB had failed to prove its allegations of abuse, but it adjudicated H.P. a dependent child under R.C. 2151.04(C). The child was later placed in the temporary custody of CSB.  Mother and Father filed objections to the magistrate's adjudicatory decision, which were overruled by the trial court.  The trial court independently entered judgment adjudicating H.P. dependent and placing the child in the temporary custody of CSB.  Mother and Father appeal and each raise three assignments of error. Because their assignments of error and supporting arguments are virtually identical, we will address them jointly.

II.

**APPELLANTS' ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AT THE ADJUDICATORY HEARING BY ADMITTING INTO EVIDENCE AND CONSIDERING A HOSPITAL SOCIAL WORKER'S TESTIMONY IN VIOLATION OF R.C. 2317.02(G)(1).

{¶5}  The parents' first assignment of error challenges the trial court's admission and consideration of the testimony of a hospital social worker that Mother admitted to her that she had relapsed on fentanyl and snorted it "a handful of times" within the week and a half before H.P. was born.  The hospital social worker spoke to Mother on the day of H.P.'s birth because of concerns that Mother may have used drugs while pregnant with H.P.  After Mother admitted using fentanyl while pregnant, the social worker informed Mother that she was a mandatory reporter and would have to make a report to CSB.

**{¶6}** At the adjudicatory hearing and after the magistrate's decision, the parents timely objected to the social worker testifying about her communication with Mother, asserting that it was privileged under R.C. 2317.02(G)(1), which provides:

> A * * * person licensed under Chapter 4757. of the Revised Code as a * * * social worker [shall not testify] * * * concerning a confidential communication received from a client in that relation or the person's advice to a client unless [an enumerated exception] applies.

**{¶7}** The parents have presented a lengthy argument under this assignment of error, much of which focuses on whether the communication that Mother had with the social worker was potentially privileged under R.C. 2317.02(G), the policy behind the privileges set forth in R.C. 2317.02, and the fact that Mother did not explicitly waive any privilege that she may have had. This Court will not address those broader issues but will confine its review to whether the trial court correctly ruled that the social worker's testimony was admissible under an exception to the privilege.

**{¶8}** The trial court concluded that the social worker's communication with Mother fell within the privilege exception set forth in R.C. 2317.02(G)(1)(a), which provides that a social worker may testify about an otherwise privileged communication if:

> [t]he communication or advice *indicates clear and present danger to* the client or *other persons.* For the purposes of this division, *cases in which there are indications of present or past child abuse* or neglect of the client *constitute a clear and present danger*.

(Emphasis added.)

**{¶9}** This Court will first address the parents' argument that interprets the second sentence of this exception to mean that "indications of present or past child abuse" must involve only child abuse of the client and not an "other person." This argument lacks merit for numerous reasons.

{¶10} Evid.R. 501 provides that issues of privilege are governed by statute and by principles of common law as interpreted by Ohio courts. "The traditional policy of the law is to require the disclosure of all information by those in possession of it, in order that the truth may be discovered and justice prevail." *In re Briggs*, 9th Dist. Summit No. 18117, 1997 WL 416331, \*6, quoting *Belichick v. Belichick*, 37 Ohio App.2d 95, 96-97 (7th Dist.1974). Because privileges against disclosure are exceptions to this general rule, "the tendency of the courts is to construe such privileges strictly and to narrow their scope since they obstruct the discovery of the truth." *Id*. Therefore, this Court must construe the plain language of this exception in a manner that favors, rather than restricts, disclosure of the communication.

{¶11} By the clear language of R.C. 2317.02(G)(1)(a), the sole requirement of this exception is stated in the first sentence: "[t]he communication or advice indicates clear and present danger to the client or other persons." The term "clear and present danger" is commonly understood to refer to a danger that is "immediate" and "severe." *Black's Law Dictionary* 269 (8th Ed.2004) (defining the term as it is used in First Amendment law). For example, under this common meaning, if a client told a social worker that she planned to kill a specific person, that communication would indicate a "clear and present danger" to that "other person."

{¶12} The second sentence of R.C. 2317.02(G)(1)(a) is not set forth as a definition of the term "clear and present danger," nor does it limit the common meaning of that term. Instead, the second sentence broadens the scope of what might otherwise be understood to be a "clear and present danger" by giving two examples of dangers that are not necessarily immediate and/or severe: those that indicate "present or past child abuse" and those that indicate "neglect of the client."

{¶13} Indications of past child abuse would not otherwise constitute an immediate danger to the client or an "other person," but the second sentence of R.C. 2317.02(G)(1)(a) explicitly states that past child abuse falls within the meaning of "clear and present danger" as the term is used in this exception. Another appellate district has interpreted this exception to encompass communications that indicate present or past child abuse of a person other than the client. *See*, *e.g.*, *In re Hauenstein*, 3d Dist. Hancock Nos. 5-03-38 and 5-03-39, 2004-Ohio-2915, ¶ 8-13; *State v. Orwick*, 153 Ohio App.3d 65, 2003-Ohio-2682, ¶ 14-15 (3d Dist.) (conducting an unnecessary interpretation of the plain language of the exception to reach the same conclusion). Construing the exception in this manner, the trial court concluded that Mother's admission to the social worker that she used fentanyl "a handful of times" shortly before H.P. was born fell within this exception because it indicated present or past child abuse of H.P.

{¶14} The parents further argue that, even if the trial court was correct in interpreting the exception to apply to child abuse of someone other than the client, there were no indications of child abuse in Mother's admission of prenatal drug use because unborn H.P. was not yet a child and CSB did not prove that newborn H.P. had suffered any actual harm. Although Mother admitted to the hospital social worker that she used fentanyl while she was still pregnant with H.P., at the time Mother communicated that admission, H.P. was a newborn child. The concern of the social worker was on the potential effect that Mother's prenatal drug use may have had on her newborn baby.

{¶15} In *In re Baby Boy Blackshear*, 90 Ohio St.3d 197, 199-200 (2000), the Ohio Supreme Court recognized that a mother's prenatal drug use can lead to an adjudication of a newborn child as abused under R.C. 2151.031(D). Although the infant in that case tested positive

for drugs after birth, thus demonstrating that he was an abused child, the cause of the abuse was the infant's exposure to drugs in utero. *See id.*

{¶16} The facts of this case do not involve a positive drug screen of H.P., or proof that Mother's drug use actually harmed H.P., but it was not necessary that there be actual child abuse for Mother's statements to the social worker to "indicate" present or past child abuse. Because "indicate" refers to a sign or suggestion, the communication need only suggest the existence of present or past child abuse. *Orwick* at ¶ 18. This privilege exception did not require proof that Mother's admitted drug use had actually harmed H.P., but only that Mother's admission of prenatal drug use reasonably indicated child abuse or a present danger to H.P. *See In re Hauenstein*, 2004-Ohio-2915, at ¶ 11 (concluding that, although actual child abuse was not substantiated, Mother's statements to her counselor about wanting to harm the child were enough to "indicate" child abuse).

{¶17} Moreover, during the hearing, Mother's trial counsel conceded that the hospital social worker had the obligation to report Mother's admission of prenatal fentanyl use to CSB because she was a mandatory reporter under R.C. 2151.421(A)(1). *See* R.C. 2317.02(G)(2). R.C. 2151.421(A)(1) requires a mandatory reporter who, while acting in her professional capacity, "knows, or has reasonable cause to suspect" that a "child" faces a threat of suffering abuse or neglect to make a report to the public children services agency or peace officer in the appropriate county.

{¶18} Therefore, the parents have failed to demonstrate that the trial court erred in allowing the social worker to testify about Mother's admission of prenatal drug use, as it indicated present or past child abuse of H.P. The first assignment of error is overruled.

## APPELLANTS' ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AT THE ADJUDICATORY HEARING BY ADMITTING INTO EVIDENCE AND CONSIDERING A LAY[] WITNESS'S TESTIMONY ABOUT THE EFFECTS OF DRUGS ON A PARENT, WHEN THAT WITNESS WAS NOT QUALIFIED TO GIVE SUCH TESTIMONY.

{¶19} The parents' second assignment of error is that the trial court erred in admitting and considering the testimony of a caseworker about the effects of the drugs fentanyl and methamphetamine. During the hearing, the caseworker was not qualified as an expert and did not testify about observing Mother when she was, or the caseworker believed she was, under the influence of either drug. Instead, the caseworker testified, based on her training, about how these drugs generally affect a person and her ability to care for a child.

{¶20} The parents raised timely objections to this line of questioning, arguing that the caseworker was not an expert who was qualified to testify about the effects of these drugs. The magistrate overruled the objection at the hearing and the trial court later overruled the parent's objections to the magistrate's decision, concluding that the caseworker's testimony was admissible as lay testimony under Evid.R. 701, which provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

{¶21} The parents' challenge under this rule does not focus on whether the caseworker's testimony was helpful to the trial court's understanding of how Mother's drug use may have affected her parenting ability. Instead, they assert that the caseworker's testimony about the effects of fentanyl and methamphetamine was not admissible as lay testimony because it was not based on "the perception of the witness" of relevant facts.

**{¶22}** Although qualified expert witnesses may be permitted to testify about how certain drugs will affect a person in general, the testimony of lay witnesses is limited to matters about which they have personal knowledge. *See* Evid.R. 602; Evid.R. 703. Evid.R. 701 "incorporates the firsthand knowledge rule with its requirement that the opinion be 'rationally based on the perception of the witness.'" 2 Gianelli, *Baldwin's Ohio Practice*, Evidence, Section 701.3 (4th Ed.).

**{¶23}** Evid.R. 701 permits lay witnesses to testify about their opinions only if those opinions are based on their "perception" of facts at issue in the case. For example, the Ohio Supreme Court has recognized that lay witnesses may give opinion testimony, based on their observations, that the alleged victim of a crime appeared to be "scared" or "not able to think;" that the plaintiff exhibited marked emotional or habitual changes following the accident at issue; or that the defendant demonstrated a demeanor that seemed inappropriate in the situation (such as lack of grief following the death of her son). *State v. Stojetz*, 84 Ohio St.3d 452, 463 (1999); *Paugh v. Hanks*, 6 Ohio St.3d 72, 80 (1983); *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 82-86. Moreover, "[i]t is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated." *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 12.

**{¶24}** The Supreme Court has also recognized that Evid.R. 701 permits lay witnesses to testify about their opinions that are based on their education or experience, but those opinions also must be based on their "perception" of relevant facts in the case. For example, a police officer may testify, based on his experience, about the similarity he observed between two sets of footprints that were introduced into evidence. *State v. Jells*, 53 Ohio St.3d 22, 29 (1990). The Court has also recognized that a drug user, if sufficiently experienced with a controlled substance,

may offer lay opinion testimony about the identity of the alleged controlled substance that she had observed. *State v. McKee*, 91 Ohio St.3d 292, 297 (2001). In each of these lay testimony examples, the witness testified about an opinion that the witness formed after directly observing facts in evidence and relevant to the litigation at issue. The witness must "perceive" relevant facts in evidence, through one of his or her senses, and offer an opinion based on the facts perceived. *See*, *e.g.*, *McKee* and *Jells*.

{¶25} In this case, the caseworker did not offer an opinion about any facts in evidence in this case. For example, she did not testify that she had perceived Mother under the influence of either drug. Instead, the caseworker testified about the general effects of fentanyl and methamphetamine on a person, which required the testimony of a qualified expert on the subject. The caseworker's testimony was based on her training, not her perception of any facts of this case, yet she had not been qualified as an expert to provide such testimony. Because this aspect of the caseworker's testimony did not fall within the requirements of Evid.R. 701, the trial court erred in admitting and considering it.

{¶26} To demonstrate that the trial court's error constituted a reversible error, however, the parents must establish not only that the trial court erred, but also that the error resulted in prejudice to their defense. *In re F.B.*, 9th Dist. Summit Nos. 28960 and 28985, 2019-Ohio-1738, ¶ 30, citing *In re P.T.*, 9th Dist. Summit No. 24207, 2008-Ohio-4690, ¶ 17. Civ.R. 61, which prohibits a reviewing court from reversing a harmless error of the trial court, provides:

> No error in * * * the admission * * * of evidence * * * is ground for * * * setting aside a verdict or * * * otherwise disturbing a judgment * * * unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

*See also* R.C. 2309.59. Under Civ.R. 61, for this Court to find that an error is harmless, it must weigh the prejudicial effect of the error and "determine that, if th[e] error[ ] had not occurred, the * * * trier of the facts would probably have made the same decision." *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-165 (1980), quoting *Hallworth v. Republic Steel Corp.*, 153 Ohio St. 349 (1950), paragraph three of the syllabus.

{¶27} The parents have failed to demonstrate that, without the testimony of the caseworker about the general effects of methamphetamine and fentanyl, the trial court would not have adjudicated H.P. as a dependent child under R.C. 2151.04(C). To begin with, the trial court mentioned this testimony, but it did not hinge its dependency adjudication on it. As will be explained in detail in this Court's review of the third assignment of error, even without the caseworker's testimony about the effects of these drugs, the trial court probably would have adjudicated H.P. as a dependent child. A dependency finding was fully supported by other evidence presented at the adjudicatory hearing. Because Mother and Father have failed to demonstrate reversible error, their second assignment of error is overruled.

### APPELLANTS' ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND THE CHILD TO BE A DEPENDENT CHILD UNDER R.C. 2151.04(C), AS THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶28} The parents' final assignment of error is that the trial court's adjudicatory decision was not supported by the evidence presented at the hearing. The trial court found that H.P. was dependent under R.C. 2151.04(C), which defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" The trial court was required to find that CSB established dependency by clear and convincing evidence. *See In re I.K.-W.*, 9th Dist. Summit No. 29100, 2019-Ohio-2807, ¶ 17,

citing R.C. 2151.35(A)(1) and Juv.R. 29(E)(4). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶29} This Court begins by noting that CSB's complaint had alleged facts about the physical condition of H.P. that it did not support with evidence at the adjudicatory hearing. For example, CSB had alleged that H.P. was admitted to the NICU for several days after birth to be monitored for symptoms of drug withdrawal and that the infant did exhibit mild symptoms of withdrawal. None of those alleged facts were established at the hearing.

{¶30} Nevertheless, CSB did present evidence to support its allegations that both parents had serious drug problems that predated the birth of H.P. and continued after her birth. The parents rely, in large part, on this Court's decision in *In re V.R.*, 9th Dist. Summit No. 23527, 2008-Ohio-1457, and argue that "[t]he facts of this case are virtually indistinguishable from *In re V.R*[.]" This Court disagrees.

{¶31} This Court recently rejected a similar argument in *In re Z.H.*, 9th Dist. Summit No. 29926, 2022-Ohio-184, ¶ 19-24. In distinguishing the facts of *In re Z.H.*, we emphasized that, in *In re V.R.*, the only evidence before the trial court focused on the mother's prenatal use of marijuana and alcohol, without any evidence of ongoing drug use or other problems in the mother's home. *Id.* In *In re V.R.*, "[t]his Court reversed that dependency adjudication, concluding that, standing alone, '[Mother's] positive toxicology screen and admission to the one time use of marijuana just prior to the birth of the baby is not clear and convincing evidence of dependency.'" *Id.* at ¶ 19, quoting *In re V.R.* at ¶ 24.

{¶32} The evidence in this case about H.P.'s dependency also involves much more than Mother's prenatal use of drugs. In addition to her admission to the hospital social worker about using fentanyl during the week before H.P. was born, Mother admitted to one of CSB's caseworkers that she had used fentanyl and methamphetamine before and after H.P. was born and that she had a long history of drug abuse. She told the caseworker that she had been sober since May 2019, but that she had relapsed during September or October 2019, before H.P. was born. Concerned about the condition of the unborn child, Mother and Father went to the hospital to "check the baby out" and hospital personnel decided at that time to induce labor.

{¶33} Moreover, the facts were not disputed that Mother and Father resided together and that they planned to continue living together after H.P. was born. Four days after H.P. was born, Mother and Father met with the caseworker at their home. The caseworker asked them each to take a drug test. Mother refused, stating that she knew the drug screen "was going to be dirty" because she had used drugs two days earlier. Mother later admitted to another caseworker that she and Father had gotten into an argument about choosing a color to paint H.P.'s nursery after the child's birth and she relapsed on fentanyl. She explained to the caseworker that she was stressed out about H.P. coming home.

{¶34} Father agreed to take a drug test when the caseworker came to the home, but the results of that drug screen were not admitted at the hearing. He believed his test would be negative and told the caseworker that he had been sober since June 2020. Father's drug treatment records from Community Health Center Addiction Center ("CHC") contradicted Father's report of ongoing sobriety, however. The 127-page CHC exhibit demonstrated that Father had been convicted of aggravated trafficking of methamphetamine and had been referred to CHC's addiction center as part of his community control. Father began treatment and drug testing at CHC

during late 2019 and early 2020 and CHC reported to Father's probation officer about his participation in the program.

{¶35} Father continued to test positive for drugs off and on throughout his involvement at CHC. During an initial assessment, Father informed his counselor that he was motivated to achieve sobriety so he could put his probation behind him and because he was expecting a child with his girlfriend. At a group counseling session during mid-September 2020, Father stated that his "drug of choice" was methamphetamine and that his sober support system was his girlfriend (Mother), "who has been sober for a year and a half."

{¶36} Progress notes throughout Father's CHC records, however, indicate that Father did not fully engage in counseling or drug testing. Notably, during the two months before H.P.'s birth, Father tested positive for amphetamines on multiple occasions, missed several counseling sessions, and missed scheduled drug tests. His counselor noted in the records that she had advised Father to engage in intensive outpatient treatment, but he did not. By the time CSB filed the complaint in this case, progress notes in Father's CHC records stated that Father had not made sufficient progress toward sobriety, and he was potentially facing discharge from the CHC program.

{¶37} Unlike the facts of *In re V.R.*, this case did not involve a mother using drugs on one occasion. Instead, the evidence demonstrated that both parents had long-term, serious substance abuse problems. Father had been unable to control his problem through court-ordered treatment and was potentially facing consequences in his criminal case if he was terminated from CHC. Although Father had identified Mother as his sober support person, and noted that she had been sober for well over a year, Mother had relapsed to using fentanyl and/or methamphetamine both before and after H.P. was born. The trial court reasonably concluded that newborn H.P. living in a home with two parents who could not control their abuse of methamphetamine and/or fentanyl

warranted the state in assuming the child's guardianship. *See* R.C. 2151.04(C). The parents' third assignment of error is overruled.

### III.

**{¶38}** The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL. Attorney at Law, for Appellant.

THOMAS C. LOEPP, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JAMES ARMSTRONG, Guardian ad Litem.